NEW ORLEANS AND NORTHEASTERN RAILROAD COMPANY *v.* AMELIA BROOKS.

1. RAILROADS. *Injury at crossings. Unlawful speed. Code* 1892, § 3546. *Evidence. Neglect to give signals.*

Evidence that defendant railroad company, without giving any signals, ran an extra train in the night time, at a speed in excess of the lawful rate (Code 1892, § 3546) over frequented street crossings, by which a person was killed, is sufficient to sustain a finding of negligence and to support a verdict for plaintiff against the defendant in an action for the wrongful death of the person so killed.

2. SAME. *Contributory negligence. Conflict of testimony.*

In such' case, there being a controversy touching the conduct of the deceased at the time of the injury, one view of the facts exonerating him from negligence, the question of his contributory negligence was properly submitted to the jury.

3. SAME. *Code* 1892, § 1808. *Prima facie case. Presumption.*

Where, in an action for death, it was shown that the injury was inflicted by the running of defendant's train, the statutory presumption that the injury was the result of defendant's negligence could only be rebutted by clear proof by defendant of facts exonerating it from blame.

FROM the circuit court of Pearl River county.

HON. WILLIAM T. McDONALD, Judge.

Mrs. Brooks, the appellee, was plaintiff, and the railroad company, the appellant, defendant in the court below. The suit was for the alleged wrongful killing of plaintiff's husband.

From a judgment for $1,999.98 and costs of suit in plaintiff's favor the defendant appealed to the supreme court.

The testimony for plaintiff was, in substance, as follows: Appellee's husband was killed within the corporate limits of the town of Poplarville about dark by a freight train of appellant going south, running at a rapid speed—exceeding the statutory rate of six miles per hour. He was found about one hundred feet north of a street crossing and about three hundred yards south of the railroad depot. The train—an extra freight— when it approached the depot slowed up some, and blew several blasts of its whistle, but after having been advised by the signal board to go ahead the engineer put on steam and ran at an accelerated speed, not blowing the whistle or ringing the bell after he passed the depot, passed one crossing without giving any signal, and ran into Brooks about one hundred feet north of the second crossing, inflicting injuries from which he died in a short time afterwards. That both the crossings south of the depot were constantly used by the traveling public, and a number of people lived in that vicinity. That Brooks was seen some distance away from where he was struck about thirty minutes before the accident. For appellant it was testified that the freight train of twenty-two cars was fully equipped with air brakes, was being pulled by an engine with a headlight burning; that the whistle was blown a number of times after passing the depot, and the bell was kept ringing; that at or about the station the track curved, Brooks being on the outer or eastern side. The engineer testified that he was on the lookout, and did not see Brooks, and knew nothing about having struck him until told of it by the fireman. The fireman testified that he was on the lookout, and saw an object on the track when the engine neared Brooks, which he first took to be a newspaper, then a calf, and, just as the engine passed over it, he saw it was a man, and called out to the engineer that a man had been struck; that the train was stopped as quick as possible, and he and the engineer went back and found Brooks on the side of the track, mortally

wounded. One witness for defendant testified that he passed the crossing just south of where the accident occurred, and saw some one in his shirt sleeves sitting on the track about one hundred feet north of the crossing; that he had his face toward the south and his back to the north; and this was about thirty minutes before the accident occurred. One Schrader testified in rebuttal for plaintiff that he saw the fireman on the night of the accident, and the fireman told him then that he saw Brooks just before the train struck him, and that two men ran off from him. The fireman had denied making such statements to Schrader when he was on the witness stand.

Defendant's motion for a new trial was overruled.

*Fewell, Bozeman & Fewell,* and *McWillie & Thompson,* for appellant.

The question presented is whether there can be a recovery against a railroad company for damages sustained by reason of the failure of its servants to comply with the requirements of the law in respect to the rate of speed in an incorporated town and the giving of signals at crossings where a man sitting or lying on the main track is run over and killed, in the absence of evidence of willfulness.

There is no dispute that Brooks was sitting or lying on the track of the main line at a point where there was no crossing, or that he might have heard the approaching train and seen its headlight in plenty of time to have gotten off the track.

Surely it will not be contended that Brooks was in the exercise of ordinary care, or any care. Indeed, the taking and keeping the position he was in was not only want of care for himself; it was recklessness of the worst sort. And we are at a loss to understand upon what ground it can be contended that his conduct was not reckless. If it was not recklessness, if his conduct was not such as to contribute directly and proximately to his death, then it would be hard to conceive of facts which would be reckless or contributive.

In *Alabama, etc., Ry. Co.* v. *Carter,* 77 Miss., 511, it is decided that "to render the company liable the speed must be the proximate cause of the injury." Chief Justice Whitfield, speaking for the court in that case, said: "The determinative questions in such cases are whether the excessive speed was the proximate cause and whether the plaintiff was guilty of contributory negligence which would bar recovery. If plaintiff be a trespasser and guilty of contributory negligence, he is barred, whether trespasser or not, by that contributory negligence, unless the injury be willfully, wantonly, or recklessly inflicted."

Broad as the language of the six-mile statute is, the number of decisions that have been made upon it have given it a definite construction that it does not cut off the defense of contributory negligence, and the legislature has impliedly approved the construction placed upon the statute by the courts by leaving it on the statute books unamended as to this point. This court has so remarked. *Clisby* v. *Railroad Co.,* 78 Miss., 937.

*D. E. Sullivan,* for appellee.

A *prima facie* case was made against defendant by proving that the injury was inflicted by defendant's train while running at a greater rate of speed than six miles per hour through the corporate limits of the town of Poplarville. The only way defendant could escape liability was to sustain its plea of contributory negligence by evidence so full and conclusive that the court could confidently say that there was nothing for the jury to decide. Even though the defendant could have shown by a preponderance of the evidence that deceased was guilty of contributory negligence, if the injury was willfully, wantonly, or recklessly inflicted, contributory negligence would be no defense. See *Railway Co.* v. *Carter,* 77 Miss., 511. The defendant must enlighten the court and jury as to the conduct of deceased, and show that he did not exercise that care and caution which a reasonably prudent man so situated would have exercised; and this must be shown, not merely by a preponder-

ance of the evidence—for then the jury would be entitled to pass on the case—but before the case can be taken from the jury this proof must be conclusive. What was the defendant able to prove on this point? Instead of proving this so clearly that the question of negligence of the deceased was put beyond the pale of controversy, the defendant proved practically nothing. Who can tell from the evidence in this case what deceased was doing when struck and killed? No one knows whether he was "sitting or lying on the track," as counsel assume in their brief; whether he was walking along or across the track; whether he was asleep or awake, conscious or unconscious, or stricken suddenly with some malady that deprived him of the power of locomotion and left him an easy victim to defendant's locomotive, which was thundering through the most populous part of the town at a high and dangerous rate of speed. The whole matter is shrouded in mystery; a cloud hangs over it all. The law has placed the burden on the defendant to clear up the situation, in order that the court and the jury may say whether or not the deceased was guilty of contributory negligence.

In *Railroad Co.* v. *McGowan,* 62 Miss., 682, the court said: "It is not contributory negligence *per se* to be on a railroad track at a place where the person had no right to be. A person's being there is a condition but for which injury could not be done him by the locomotive or cars, but his being there is not what constitutes contributory negligence. Whether his being on the track not at a crossing is contributory negligence depends on circumstances."

The court also said in the above case: "A railroad company violates the statute at its peril, and must respond for any damages done in such wrongdoing, and must bear the burden of exculpating itself from liability in such case, as in others; but if it shall appear that plaintiff failed in the degree of care which under the circumstances it was incumbent on him to observe to avoid injury, he cannot recover."

Defendant's train was running through the town by the

depot over public crossings, and at a time when a train was not expected, at a dangerous rate of speed, as high as thirty-five miles per hour, with no whistle blowing and no bell ringing, and evidently no lookout kept. This amounted to recklessness, and would make defendant liable if it had been proven that deceased was guilty of contributory negligence.

In *Stevens* v. *Railroad Co.*, 81 Miss., 195, the court said it must be a rare case of negligence that the court will take from the jury. It was also held in that case that where a train was running through a much frequented part of a city, at a speed greater than allowed by law, and without giving any signals, the railroad company was guilty of recklessness amounting to willfulness, and the party injured might recover without reference to whether he was rightfully or wrongfully on the track.

TRULY, J., delivered the opinion of the court.

The court refused the appellant a peremptory instruction, but the theory of the defense, in each of its varying phases, was fully and fairly submitted for the determination of the jury. The sole question here presented is whether, under any view of the case, accepting as true, and giving the most favorable consideration to, the testimony of the appellee, this judgment can be sustained. That the employes of appellant were guilty of negligence is manifest. To run an extra freight train, at an unusual time, through a thickly settled part of a town, at a rapid rate of speed, in the night time, over frequented street crossings, and without giving any signal or ringing any bell, must assuredly be deemed negligence. The appellee did not insist, nor did the court instruct, that such acts on the part of the railroad employes was gross negligence, but allowed the jury to pass on the question of whether the conduct of Brooks, the injured party, as disclosed by the testimony, was such as to constitute, under the circumstances of this case, contributory negligence. Manifestly, appellant has no ground of complaint on this score. It is contended that the facts of the case show beyond dispute

that Brooks, the person injured, was guilty of such recklessness as to preclude recovery by appellee. But the conduct of Brooks at the time of the injury was of itself a controverted fact, and this and all other controverted facts must be submitted to the jury. This was done by the trial judge, and their determination was adverse to the contention of appellant. The jury, upon disputed facts, guided by fair and accurate instructions, having found that the negligence of appellant was the proximate cause of the injury, and there being some testimony to sustain that finding, we must decline on this ground to reverse the judgment, even though it may be granted that the question was one of doubt.

There is yet another principle of law, well settled in this state, which required the submission of the case to the jury. It was shown beyond peradventure that the injury was inflicted by the running of the train. This was *prima facie* proof of negligence, authorizing a recovery by plaintiff. To overcome this statutory presumption, it devolved upon the appellant to exculpate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overthrown by conjecture. The circumstances of the accident must be clearly shown, and the facts so proven must exonerate the company from blame. If the facts be not proven and the attendant circumstances of the accident remain doubtful, the company is not relieved from liability, and the presumption controls. In this case the testimony of the fireman, by whom alone it was sought to prove the details of the accident, was contradictory and discredited. With this testimony out of the record, the presumption of negligence applies, for the accident remains unexplained. It may well be that the jury doubted or rejected the testimony, as it was in their province to do, and decided that appellant had not established its freedom from negligence. This consideration is likewise sufficient to sustain the finding of the jury.

*Affirmed.*