EVA KORTER *v.* GULF & SHIP ISLAND RAILROAD COMPANY.

[40 South. Rep., 258.]

1. RAILROADS.   *Injury to persons on track.   Negligence.   Code 1892, § 1808.*

   The statutory presumption of negligence, under Code 1892, § 1808, making proof of injury inflicted by the running of the locomotives or cars of a railroad company *prima facie* evidence of liability on the part of the company, ceases to be controlling upon the introduction of testimony showing all the facts of the case, and it makes no difference that one or more of the witnesses by whom the facts were shown have been impeached if others who testify to all of the facts remain unimpeached.

2. SAME.   *Concrete case.*

   The statutory presumption of negligence in case of injury from the running of a train is overcome by evidence showing that as soon as the rear brakeman of a train, backing at a speed of two to four miles an hour, saw a pedestrian, whether a trespasser or a licensee, turn and walk across the track in proximity to and in

Statement of the case.

plain sight of the backing train, he gave the signal to stop, and it was immediately acted on by the engineer.

3. WITNESSES. *Impeachment.*

Impeaching by contradictory statements the testimony of one or more witnesses who testified to certain facts does not impeach or affect the testimony of other witnesses who testified to the same matters.

FROM the circuit court of Harrison county.

HON. WILLIAM T. MCDONALD, Judge.

Mrs. Korter, the appellant, was plaintiff in the court below; the railroad company, the appellee, was defendant there. The suit was for the alleged wrongful killing of plaintiff's husband by the railroad company. From a judgment in favor of defendant company, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

The accident resulting in the death of Henry Korter, husband of the plaintiff, occurred at Gulfport, on the pier of the appellee leading into the Gulf of Mexico. The pier is over a mile in length, and is about two hundred feet in width. It extends from the mainland on the north, southward, to the deep-water channel. On the western side of the pier is the anchor basin, which extends from the extreme southern end of the pier, alongside the pier, for a half mile. North of the anchor basin there was, at the time of Korter's death, a canning factory, to which a sidetrack extended. Just south of this factory, on the west side of the main line, there was another sidetrack. From the shore to the canning factory on the west side of the pier there extended a plank walk, constructed along the edge of the pier, for the use of pedestrians. South of the canning factory to the anchor basin is an opening unobstructed, except by the sidetrack above referred to, and pedestrians going from the factory to the anchor basin used this as a walk. On the east side of the pier a plank walk, constructed for pedestrians, extended the entire length of the pier. There were a number of cross-walks built from the east side to the west side of the pier for the use of pedestrians in

going from one side to the other.     On the occasion of the accident a train of the railroad company's, in charge of a crew consisting of an engineer, fireman, and three brakemen—one brakeman being near the engine, another near the middle of the train, and the other on the rear car—was engaged in setting out cars on the sidetracks.     A number of the forward cars were to be set out on the sidetrack leading to the factory; and in order to do this, the rear cars had to be set on the sidetrack south of the factory, and while the train was backing down towards the southern sidetrack, at a rate of from two to four miles an hour, deceased was seen to come from the south end of the oyster factory and walk in a southeasterly direction towards the main track, then turn and walk across the track in proximity to the backing train.     The flagman on the rear car, as soon as he observed the deceased .attempting to cross the track in proximity to the train, · gave the signal to stop.     The engineer immediately stopped the train, but not in time to prevent harm, for the deceased was found crushed beneath the wheels.     Deceased was a painter, and had been engaged in painting a vessel anchored in the anchor basin on the west side of the pier south of the canning factory.

*Barber & Mize,* for appellant.

The only resemblance between the Nichols case—83 Miss., 136 (s.c., 36 South. Rep., 192)—relied upon by the appellee, and the one at bar, is the fact that the deceased in both cases received injuries on the Gulf & Ship Island pier.     In the Nichols case all of the facts and circumstances were testified to by witnesses.     The fact that Nichols was drunk, as disclosed by the record, coupled with his own testimony that he alone was to blame, relieved the railroad of liability.     In the case at bar, none of the facts as to how Korter came to his death are in evidence, except that he was struck by some part of the backing train.

Appellee says that deceased should have stopped and looked and listened, while on the pier, for approaching trains. In answer to this argument, we would refer this court to its decision in the case of *Louisville, etc., R. R. Co.* v. *Crominarity,* 86 Miss., 464 (s.c., 38 South. Rep., 633), decided on June 12, 1905, in which TRULY, J., says that the court declines to adopt any such rigid rule that one must stop and look and listen before approaching a railroad track.

Counsel say that deceased was a trespasser. This could not be, because the record discloses that the west walk leading to the south end of the oyster house took deceased to the place where Strange first saw him, and Strange's own testimony is that deceased could not have gotten from the place to which said west walk conducted him without having crossed the main line of tracks on said pier. The railroad company cannot erect a public walk for pedestrians by which they are conducted to a certain place at the end of the walk, in order to leave which they are compelled to cross the tracks of said railroad, and then make them trespassers in so doing. Where a railroad company has built a certain walk for pedestrians, this is an invitation to pedestrians to make use of said walk; and when they have reached the destination to which said walk conducts them, the law does not require them to retrace their steps on said walk to enable them to leave said place, but allows them to go from its end to their place of business by some more convenient route, even if it becomes necessary to cross the tracks of said railroad, and in so crossing they are not trespassers. *Louisville, etc., Ry. Co.* v. *Hirsch,* 69 Miss., 126 (s.c., 13 South. Rep., 244).

Even where a person has voluntarily placed himself in a position of peril, yet where this peril becomes known to the employes of the railroad company, they must use all reasonable means in their power to stop the train, if necessary, to prevent injury.

In the case of *Mobile, etc., R. R. Co.* v. *Stroud,* 64 Miss., 785 (s.c., 2 South. Rep., 171), the court uses the following language:

"If the railroad employes see a man on the track at a place or under such circumstances that he cannot readily leave it in time to avoid injury, or if they discover that for any cause he is unaware of his peril, then they are bound to stop the train, if this can be done."

To the same effect also is *Cottrell* v. *Southern Ry. Co.,* 80 Miss., 611 (s.c., 32 South. Rep., 1), wherein the court says: "Whether, therefore, the engineer, when he saw the danger threatening appellant, could have shut off steam and put on the brakes, or used other means in his power to lessen the speed of the train, and whether proper diligence on his part would have avoided the injury suffered by appellant, are questions which, we think, should have been submitted for solution to the jury."

*James H. Neville, E. J. Bowers, R. L. Dent,* and *McWillie & Thompson,* for appellee.

Conceive a railroad track extended on a pier into the sea for the distance of a mile or more, and you have in mind the actual condition of tracks involved in this suit. Of course, it is a legitimate business to transport lumber out on this track to be loaded into ships. The defendant railroad company on the occasion in question was backing a freight train loaded with lumber out on this pier. The train consisted of the engine and quite a number of cars, so loaded with lumber that the engineer and fireman, at their respective posts of duty on the engine, could not see to the south end of the backing train. The company, however, had placed a flagman, or brakeman, on the south end of this backing train; and since the man on the south end could not, because of the way the cars were loaded with lumber, communicate by signals with the engineer, another employe of the company was stationed in such a position on the train that he could communicate by signals with the engineer and be communicated with by the brakeman on the south end of the train. The train was proceeding slowly, backing to the southward. In its progress it came opposite an oyster-canning factory situated on the west side of the

pier.  As the train was proceeding southward, passing this can-
ning factory, Korter, the decedent, was seen to come out from
the factory, or from behind it, and to walk southward on the side
of the railroad track and very near to it; proceeding along south-
ward by the side of the track a short distance, he was seen by the
brakeman to suddenly turn across the track, almost immediately
in front of the moving train.  Up to this time there is no room to
claim or pretend that there was any negligence on the part of
the railroad company.

What was done as soon as the moment arrived when Korter
was in danger?   Instantly the brakeman on the south end of
the train gave the alarm—gave the signal to stop, which was
instantly communicated to the engineer—and the train was
stopped as soon as it could be done.   There is no room to pretend
that the railroad company was guilty of negligence before Korter
put himself in a place of danger; nor is there room to pretend
that the railroad company was guilty of negligence after Korter
placed himself in a position of danger.   The facts are wholly
known.   There is no room for the statutory presumption, and
it follows, of course, that the peremptory instruction was cor-
rectly given.   *Nichols* v. *Gulf, etc., R. R. Co.,* 83 Miss., 136
(s.c., 36 South. Rep., 192); *New Orleans, etc., R. R. Co.* v.
*Bourgeois,* 66 Miss., 3 (s.c., 5 South. Rep., 629); *Bedford* v.
*Louisville, etc., R. R. Co.,* 65 Miss., 385 (s.c., 4 South. Rep.,
421); *Hamlin* v. *Yazoo, etc., R. R. Co.,* 16 South. Rep., 877;
*Alabama, etc., R. R. Co.* v. *Barrett,* 28 South. Rep., 820; *Mur-
dock* v. *Yazoo, etc., R. R. Co.,* 77 Miss., 487 (s.c., 29 South.
Rep., 25); *Illinois, etc., R. Co.* v. *McLeod,* 78 Miss., 334 (s.c.,
29 South. Rep., 76); *Illinois, etc., R. R. Co.* v. *Lee,* 71 Miss.,
895 (s.c., 16 South. Rep., 349); *Illinois, etc., R. R. Co.* v.
*Arnola,* 78 Miss., 787 (s.c., 29 South. Rep., 768); *Vicksburg,
etc., R. R. Co.* v. *Phillips,* 64 Miss., 693 (s.c., 2 South. Rep.,
537); *Mobile, etc., R. R. Co.* v. *Stroud,* 64 Miss., 748 (s.c., 2
South. Rep., 171).

Argued orally by *E. M. Barber,* for appellant, and by *R. H. Thompson,* for appellee.

TRULY, J., delivered the opinion of the court.·

Whether appellant's deceased husband was a trespasser or a licensee, it is not necessary now to consider. Whether trespasser or licensee, it was still his duty to conduct himself with ordinary care and prudence for his own protection. Whether there be any real distinction between the duty owing to a trespasser and that owing to a licensee (compare Williams' case, 69 Miss., 639 [12 South. Rep., 957], and Arnola's case, 78 Miss., 787 [29 South. Rep., 768; 84 Am. St. Rep., 645]), the burden of exercising ordinary care is incumbent upon the party, even if a licensee. *Nichols* v. *Railroad,* 83 Miss., 139 (36 South. Rep., 192).· The record in this case shows, after all the circumstances attendant upon the accident are fully disclosed, that the death of Korter·was caused by his own inexcusable recklessness. He was not at the time at a place where duty called him or where invitation had attracted him. But even had he been, it is manifest that by the exercise of any degree of care he could have avoided the slowly-moving train, which was the cause of his death. *Morehead* v. *Railroad,* 84 Miss., 123 (36 South. Rep., 151). The record shows that he was in a place where there were no obstructions to the view, and fails to show any circumstances which·could impute any degree of negligence to the operatives who were in charge of the train.

The case for the appellant rests solely upon the statutory presumption of negligence which attaches in case of injury inflicted by the running of a train; but this presumption gives way when the facts attendant upon the accident are made known. In the instant case all the facts were thoroughly investigated ·and plainly appear in the record. Under the case made by the proof the presumption of negligence was met and overthrown, it being perfectly manifest that there was no negligence upon the part of

the employes of the railroad company.    *Railroad* v. *Brooks,* 85 Miss., 275 (38 South. Rep., 40).

There was no conflict upon any matter justifying the submission of the question of negligence to the jury.    The fact that the testimony of one of the witnesses as to the circumstances of the accident was attempted to be impeached by proof of contradictory statements does not by any legal rule of evidence operate either to impeach or contradict the testimony of the other witnesses.    Conceding that the testimony of one witness was rendered absolutely valueless by successful impeachment, this casts no cloud of suspicion or doubt on the veracity of other witnesses. The testimony of both Strange, the flagman, and Neno, the engineer, stands absolutely uncontradicted and unimpeached. And this testimony is conclusive that there was no negligence on the part of the train operatives, but inexcusable recklessness on the part of the deceased.    This precludes any recovery of damages for his death.

*Affirmed.*