ILLINOIS CENTRAL R. R. Co. *v.* GIBSON.

Feb. 1, 1954

No. 39078        51 Adv. S. 27        70 So. 2d 52

*Dent & Dent,* Collins; *Byrd, Wise & Smith,* Jackson, for appellant.

*R. S. Tullos,* Raleigh, for appellee.

HALL, J.

This is an appeal from a judgment against the railroad company in the amount of $300.00 for the killing of two

cows belonging to appellee by a train of the company. Appellant owns and operates a branch railroad line which runs from Laurel in a general westerly direction to Saratoga at which point it intersects a line running from Jackson to Gulfport. The cows were killed by a freight train running in a westerly direction at about 11:55 p. m.

Appellant requested a peremptory instruction which was refused by the trial court and such refusal is the first assignment of error. ██ ██ The declaration simply charged that the defendant's locomotive was operated in a careless and negligent manner and struck and killed the cows. This was a sufficient charge under our prima facie statute, Section 1741, Code of 1942, even though there was no allegation as to wherein the company was negligent. ██ ██ We have repeatedly held that when all the facts are in evidence the prima facie presumption of negligence disappears. Appellant here contends that all the facts were in evidence and were undisputed and that for this reason it was entitled to the requested peremptory. This contention necessitates a review of the evidence. It was shown that appellee owns land on both sides of the railroad and that this particular land.is used by him as a pasture for his cattle. Where it crosses appellee's land the track is straight for approximately one-half mile. Near each end of this straight track there is a trestle. With the consent of the company appellee ran his pasture fence underneath each trestle so that his cattle had free access to the railroad right-of-way and to the pasture on either side of the track. About midway between the two trestles appellee had a private crossing over the railroad. His evidence is that on the day after the killing he went upon the private crossing and found signs such as blood, hair, hide, bones and debris beginning upon this crossing and extending from that point

one-eighth of a mile to the west. The cows had already been buried by the section foreman, one being about 100 feet west of the crossing. The signs showed that the other cow had been carried by the engine on further west as above indicated, and that that cow had been picked up by the engine on its return trip to Laurel later that night and had been carried to the east about one-half mile and beyond appellee's land where it was dumped off upon the right-of-way and there buried. Appellee's evidence further showed that for about one-fourth of a mile east of the crossing there was nothing whatever to obstruct the view, that the pasture was kept clean and that there were no bushes along the right-of-way.

In order to explain the accident the railroad company offered three witnesses,—the engineer, fireman, and section foreman. We have reached the conclusion that the facts detailed by all the witnesses were in such conflict in material matters that the peremptory instruction was properly refused and we shall set forth some of these conflicts not only between the defendant's evidence and that for the plaintiff as heretofore detailed, but also in the evidence given by the defendant's own witnesses. It was shown without dispute that the engine was properly equipped with standard electric headlight and brakes; that the headlight would show objects at a distance of 800 to 1,000 feet; that the train consisted of 40 or 45 cars, about half of which were loaded, and that on the occasion in question it was traveling at a speed of about 20 to 22 miles per hour. Both the engineer and fireman said that they were keeping a constant lookout. The engineer testified that there was a public crossing some distance to the east of appellee's pasture and that he had set the bell ringing automatically before reaching this public crossing and had not turned it off and that it was ringing continuously from the public crossing on down to the point where the cows were struck. He said that the cows ran out of the bushes and upon the track when he was

within about 150 to 200 feet of them, and that he thereupon applied the brakes and blew a stock alarm with the whistle but was unable to stop before the cows were struck. He said that the train ran about 600 to 700 feet before it came to a stop, and that under ordinary conditions it would take about 500 to 700 feet to stop the train. He said that the cows were not struck on the crossing but at a point about 60 or 70 feet east of the west trestle. He also testified that all members of the train crew except the engineer and fireman were in the caboose at the rear of the train. The fireman testified that the two cows came upon the track out of some bushes about 60 feet ahead of the engine, that the engineer immediately applied the brakes and started ringing the bell and blowing the whistle and stopped the train about 200 feet after striking the cows, making a total distance of 260 feet which the train ran after the brakes were applied. He said that one cow ran down the track and that the other one came straight across it, and that this occurred about 200 feet east of the west trestle and about one-fourth of a mile west of the private crossing. The fireman further testified that the head brakeman and the switchman were not riding in the caboose but were riding on the engine. Both the engineer and the fireman testified that on the return trip they were keeping a lookout and did not see the dead cow on the track west of the west trestle and did not know that the engine had picked up this cow and carried it back to the east. The section foreman testified that on the next day he found the two dead cows and buried them where he found them but did not notify Mr. Gibson. He said that the cows were struck about 1,000 to 1,100 feet west of the private crossing and about 100 feet east of the west trestle; that one of them was knocked off the track by the train and was buried at that point; that the signs such as hair, hide, bones, etc., showed that the other cow was carried to the west and dropped off just west of the west trestle and that on the

return trip the train picked up this cow and carried her back to the east about 160 feet and dropped it off at that point and that he buried it there. He said that he did not notice any signs on the private crossing, but admitted that he did not look for any signs at that place. ■■■ We think that in view of the material conflicts which we have mentioned it cannot be said as a matter of law that the appellant has shown by undisputed facts just how the killing occurred, especially since the company's own witnesses were not in agreement as to all the material facts. Hence we conclude that there was no error in denying the requested peremptory instruction, and in so doing we do not in any manner depart from our numerous decisions which hold that when all the facts are in evidence the presumption under the prima facie statute disappears, but we do hold that the evidence as a whole was sufficient to create an issue of negligence for decision by the jury.

■■■ Appellant next contends that the trial court erred in granting to appellee the following instruction: "The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence in this case that the cows in question was the property of the plaintiff and was killed by the defendant company in a reckless and grossly negligent manner as alleged in the declaration, then it is your sworn duty to find for the plaintiff and assess his damages, if any, in such a sum of money that will reasonably compensate him for the loss that he sustained as a result of the killing of the stock by the defendant company."

It will be noted that the instruction does not charge the jury that if they believe from the evidence that the engineer saw the cattle upon the track in time to stop the train and negligently failed to stop it then the jury should find for the plaintiff, but it simply says that if the jury believe that the cows were killed in a reckless and grossly negligent manner as alleged in the declara-

tion they should find for the plaintiff. The instruction gave no guide whatsoever to be considered by the jury as to what would constitute negligence; it referred the jury to the declaration but the declaration charged no facts which would constitute negligence. It was clearly erroneous in both of the particulars mentioned, and this error was not cured by any other instruction granted by the trial court. In fact the only other instructions obtained by the plaintiff were one as to the form of the verdict and one that nine jurors might return a verdict. This type of instruction has been condemned by this Court repeatedly and yet some attorneys continue to request it and some trial courts continue to grant it.

In Rawlings v. Royals, 214 Miss. 335, 58 So. 2d 820, we cited numerous cases holding that it is improper to grant an instruction which would allow the jury to find negligence without giving any guide as to what acts or omissions are sufficient to constitute negligence. We also pointed out that in many of the cases cited a judgment for plaintiff was affirmed because other instructions did give a correct guide to the jury as to what might constitute negligence, but that invariably where the error was not cured by other instructions the judgment for plaintiff was reversed. In this case the error was not cured by any other instruction.

Moreover, the instruction is erroneous in referring the jury to the declaration. The applicable law and facts of the case should be simply stated without referring the jury to the declaration. See Southland Broadcasting Co. v. Tracy, 210 Miss. 836, 50 So. 2d 572, and the numerous authorities therein cited.

For the error indicated the judgment of the lower court must be reversed and the cause remanded for a new trial.

Complaint is also made at the refusal of two instructions requested by appellant but the principles which they contained were embodied in other instructions which

were granted to appellant and their refusal was, therefore, not prejudicial.

Reversed and remanded.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.