275 So.2d 858 (1973)
Mary Ellen HUBBARD, a minor by Mary Nell Hubbard, Individually and as mother & next friend
v.
Thurman R. MORRIS.
No. 47041.
Supreme Court of Mississippi.
April 2, 1973.
Caldwell, Caldwell & May, Jackson, for appellant.
Wise, Carter, Child, Steen & Caraway, William M. Dalehite, Jr., Jackson, McLaurin & Nicols, Brandon, for appellee.
SMITH, Justice:
On September 21, 1967, a pickup truck being operated by appellee, Thurman R. Morris, collided with the rear of a Volkswagen in which appellant, Mary Ellen Hubbard, then a sixteen-year-old high school student, was riding as a passenger. On March 23, 1971, an action for damages for personal injuries alleged to have been sustained in the collision by Mary Ellen Hubbard was begun against Morris in the Circuit Court of Rankin County.
No question was presented by the evidence that the collision was the proximate result of negligence on the part of Morris in the operation of his truck. The trial court instructed the jury "to find in favor of the plaintiff and to assess her damages in such amount as she is reasonably entitled to." Following this instruction, the jury returned a verdict for the plaintiff but "in the sum of $0.00 (no damages)... ." From the judgment entered pursuant to that verdict, Mary Ellen Hubbard has appealed.
While the evidence presented no question as to the fact that negligence on the part of Morris caused him to strike the rear of the Volkswagen, it is contended by appellee that the evidence, at the very least, created a factual issue as to whether the appellant *859 had been injured, and that this issue had been resolved by the jury's verdict in his favor. In support of that contention, appellee argues that the jury's verdict of "no damages" was justified by the evidence, with such reasonable inferences as the jury was warranted in drawing from it. It is contended that the jury properly considered in arriving at its verdict that, (1) the damage to the rear of the Volkswagen was slight; (2) plaintiff consulted seven doctors following the incident and before filing suit and only produced as a witness the last one of the seven, who first saw her some two and one-half years after the date of the collision; (3) the evidence of injury was wholly subjective, or very nearly so, and plaintiff's statements of pain and discomfort were self-serving and contradicted by circumstances which showed that she had led a normal and active life in the more than three years which intervened between the date of the collision and the filing of suit; (4) the inference justified by failure to call them that the testimony of the six doctors, who had seen her earlier and who resided in the area, would have been unfavorable to her claim; and, (5) the jury had good opportunity to observe the plaintiff during the course of the trial.
In passing upon appellant's contention that the jury failed to respond to the evidence, or, in effect, that the verdict of "no damages" was against the overwhelming weight of the evidence, it is necessary to examine in some detail the testimony of the one medical witness who testified. This witness, who saw plaintiff some two and one-half years after the accident, testified as to the history which she had given him and which was to the effect that, ever since the accident, she had experienced pain in the region of the cervical spine. The testimony of this witness indicates that ordinary x-rays were ineffective in disclosing the condition of the intervertebral discs. However, those he took showed no narrowing of the interspaces or other abnormality of the cervical spine indicative of a ruptured or protruding disc. He prescribed traction and, when plaintiff reported that she continued to experience pain, a myelogram was performed. This also failed to disclose a ruptured, protruding or otherwise defective intervertebral disc in the area complained about. A discogram was then done, which appears to consist in the insertion of a needle into the discs, in the area of pain, under local anesthetic, and the patient's answers as to whether the pain she experiences as the result of the needle is of the same "type" of pain that she had been experiencing previously. From this the doctor concluded that she would either have "to live with it" or have an operation for removal of a disc or discs and fusion of the spine at the point of removal with bone to be taken from the hip.
It will be seen that the conclusion of the doctor that appellant had a ruptured, protruding or otherwise defective disc at the locale of the pain she claimed to be suffering, rested, in large part, if not entirely, upon plaintiff's own statements. It is, to some extent at least, negatived by the x-rays showing no narrowing of the intervertebral interspaces, and by the essentially negative results of the myelogram. Of course, whether the results of the tests are of such a specific and conclusive nature as to warrant the firm conclusion that appellant has a ruptured cervical disc or justify radical surgery upon the cervical spine are medical questions to be determined by the doctor and the patient.
Appellant claims to have been painfully injured although no outward, visible sign thereof existed. As pointed out by appellant, her testimony on these points is not contradicted by any direct testimony and, of course, may easily be true. In the nature of things, however, the difficulty (if not the impossibility) of producing direct evidence to refute such statements is manifest. Assertions that one feels pain when there is no visible or physically apparent cause for it is capable of being met only by proof of circumstances reasonably tending to negative them. It is also true that the testimony of appellant's mother that appellant *860 complained to her of pain and disability following the incident and has continued to do so is uncontradicted. This latter testimony is, of course, a type of hearsay which tends to support or bolster the statements of appellant.
Under a long established rule, supported by many cases, on appeal from a judgment entered pursuant to a jury verdict, this Court will accept the evidence, together with all inferences which reasonably may be drawn from it, which favors or supports the verdict of the jury. Because of this, and the conclusions we have reached, we have commented at some length upon the facts and circumstances in evidence (or which the jury might infer from the evidence), which support or favor the jury's factual finding of "no injury."
It is not suggested that there was not ample evidence capable of supporting a jury finding that appellant did, in fact, sustain some injury as the result of the collision, our purpose being to demonstrate that there is an issue of fact as to injury or no injury for determination by a jury.
We have reviewed the evidence, with all reasonable inferences to be drawn from it, in the light most favorable to the jury's verdict. Without attempting to go into further detail, we have reached, nevertheless, the following conclusions: While a jury issue was created as to the question of injury, on the whole record, the weight of the evidence supported the contention of appellant that she did, in fact, sustain some injury. Therefore, the fact of injury, as distinguished from the question of the liability of Morris for such injury, if any, as may have resulted proximately from his negligence, remains an issue for resolution by a jury. Because the jury's verdict is contrary to the weight of the evidence, the judgment appealed from must be reversed and the case remanded for retrial before another jury.
Under the special facts of the case, and assuming that, upon retrial, the facts will be developed substantially as upon the original trial, defendant's instructions Numbers 6, 7, 8 and 12 should not be given.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.