**ALABAMA GREAT SOUTHERN RAIL-
ROAD COMPANY, Plaintiff-
Appellee,**

v.

**ALLIED CHEMICAL CORPORATION,
Armco Steel Corporation, and General
American Transportation Corporation,
Defendants-Appellants.**

No. 73-3057.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1974.
Rehearing En Banc Granted Nov. 6, 1974.

Sherwood W. Wise, Thomas G. Lilly, Jackson, Miss., for Allied Chem.

Junior O'Mara, Jackson, Miss., for General Am. Transportation.

W. F. Goodman, Jr., Jackson, Miss., for Armco Steel.

Lewis T. Booker, Robert F. Brooks, Richmond, Va., Tally D. Riddell, Quitman, Miss., for plaintiff-appellee.

Before COLEMAN, CLARK and GEE, Circuit Judges.

CLARK, Circuit Judge:

Alabama Great Southern Railroad Company (AGS) train No. 154 left New Orleans, Louisiana just after midnight on January 25, 1969 with four engines pulling 113 freight cars and a caboose. At Dragon, Mississippi No. 154 picked up a "cut" of 26 jumbo tank cars, each filled with 32,000 gallons of liquefied propane gas, placed them in line behind the sixtieth car, and proceeded north. As the second jumbo tank car, No. ACSX 932003, traversed a crossing of AGS and Gulf, Mobile & Ohio Railroad (GM&O) tracks at 4:20 A.M. in Laurel, Mississippi, the second wheel on the left side (designated the L–3 wheel) fractured and broke, causing the 003 and 17 other tank cars to derail and detonate. Fire and explosions killed or injured a number of people and inflicted extensive property damage. The 003 tank car was owned by the Allied Chemical Corporation (Allied). Armco Steel Corporation (Armco) had manufactured the L–3 and other wheels and sold them to the General American Transportation Corporation (GATX), which had assembled them on the 003 car purchased by Allied in 1962.

On the day following the derailment AGS began processing the damage claims of third parties, ultimately paying out over 7,395,000 dollars to settle 3,492 claims and defray expenses. The railroad then brought this diversity action in the Eastern District of Virginia against Allied, GATX and Armco to recover 10,000,000 dollars in property damages and indemnity for payments to third parties injured or damaged by the accident. Pursuant to 28 U.S.C. § 1404(a), the litigation was transferred to the Southern District of Mississippi. Alabama Great Southern Railroad Co. v. Allied Chemical Corp., 312 F.Supp. 3 (E.D.Va.1970).[1]

In its complaint AGS predicated recovery on (1) defendants' negligence in the design, manufacture, testing and inspection of the L–3 wheel, (2) strict liability in tort and (3) warranty. Defendants denied liability, asserting that AGS could not recover indemnity because it had acted as a volunteer in settling with third parties, or because it had been negligent in maintaining the roadbed, track and crossing in an unsafe and dangerous condition, operating the train at an excessive and unreasonable speed, and failing properly to control, inspect and manage the train and equipment. In addition, Allied and GATX filed counterclaims sounding in negligence against the railroad for the value of the tank cars and liquefied propane gas destroyed in the derailment.

During closing argument AGS dropped its breach of warranty claims against all defendants and its claim of strict liability against Allied. At the close of a five week trial the district court reserved a ruling on defendants' motions for directed verdicts and excluded the railroad's claim for property damages, thus casting AGS' action in indemnity only. The various claims of negligence and the remaining claims for strict liability were submitted to a jury, which returned general verdicts for AGS on its indemnity claim and the counterclaims of Allied and GATX. The district court denied defendants' motions for directed verdicts, judgments N.O.V. and for new trials. Defendants appeal from the judgment for AGS in the amount of 3,600,000 dollars on its claim for indemnity. Allied and GATX appeal from the judgment for AGS on their counterclaim. We affirm the judgment for AGS on the counterclaim, but re-

[1]. In Alabama Great Southern Railroad Co. v. Allied Chemical Corp., 467 F.2d 679 (5th Cir. 1972), this Court reversed a ruling by the district court granting the defendants summary judgment on the ground that the action was barred by the Mississippi Statute of Limitations.

verse the judgment for AGS on its indemnity claim.[2]

In reviewing the record in order to determine whether this case should have been sent to the jury or a verdict directed as a matter of law, an appellate court under both Mississippi and federal law "[is] duty bound to accept all evidence in favor of the verdict as true and to give such evidence the benefit of all permissible inferences that would help sustain the jury's decision." *Little v. Green*, 428 F.2d 1061, 1066 (5th Cir. 1970); *accord Ayers v. Wolfinbarger*, 491 F.2d 8, 13 (5th Cir. 1974); *Hubbard v. Morris*, 275 So.2d 858 (Miss. 1973). Thus, all conflicts in the evidence must be resolved in favor of the prevailing party. Accordingly, we recapitulate the evidence substantially as it was stated in the brief of the plaintiff railroad.

The L–3 wheel was defectively manufactured. During the manufacturing process at Armco's Wheel Works at Butler, Pennsylvania, grooves and tears were machined into the surface of its plate. The grooves and tears greatly weakened the wheel by concentrating stresses in the grooves and tears, thereby greatly reducing the wheel's ability to resist the type of sudden impact any railroad wheel receives from passing over a crossing. The wheel was manufactured to meet the governing specifications of the Association of American Railroads (AAR), published in its Manual of Standard and Recommended Practices. While the wheel met the chemical and dimensional standards of that specification, it did not meet the requirements of paragraph 16(c), which provides:

> Wheels shall be given a thorough surface examination and gaging at the place of manufacture before being offered for inspection. They shall have a workmanlike finish and must be free from defects liable to develop in or cause removal from service.

After the L–3 wheel was received at General American's plant, it remained in inventory there for approximately two months. GATX had ample opportunity to inspect it at that time. In addition, GATX also had the right, if it desired, to visit Armco to inspect the L–3 and other wheels before they left the factory. The wheel should have been, but was was not, rejected by either Armco's or General American's inspectors.

When Allied ordered a series of 135 jumbo tank cars from GATX in 1962, it directed General American to use as many Armco parts as possible on the cars. Allied had the right to inspect the cars during the course of their manufacture and to inspect them upon completion of manufacture.

Once car 003 entered railroad service the L–3 wheel quickly became covered with grease, dust and road grime as a result of normal operating conditions. Because the plate of the wheel was coated and a normal view of the plate is largely obscured by the truck, it

2. Each defendant contends before this Court that (1) the district court should have granted a directed verdict for it as a matter of law; (2) the district court erred in these charges to the jury: (a) "joint tort feasors" are parties who are guilty of equal negligence, (b) "active negligence" means negligence which is greater than passive negligence, and (c) the railroad could be legally liable to third parties even if the L–3 wheel defect was undiscoverable by it; (3) the jury was confused and returned an invalid compromise verdict; and (4) the jury was misled by written, post-instruction communications received and answered by the court without the participation of knowledge of counsel for any party.

In addition, Allied contends it is not liable to indemnify AGS because (1) it was not guilty of any negligence proximately causing the derailment since it had no duty as a purchaser to inspect the L–3 wheel and 003 car; and (2) if Allied had such a duty, AGS was charged with a similar duty. Allied also asserts that the form of the verdict submitted to the jury was improper. In view of our holding that the district court should have directed verdicts for the defendants as a matter of Mississippi law, we pretermit consideration of any of these specifications of error.

would have been *impossible* within a short period of time after the car went into service for a railroad car inspector to have detected these machining defects. Thus, the grooves and tears in the wheel's plate were not discerned by the car inspector who made the regular interchange[3] inspection of the wheel at the time it was received by AGS on January 24, 1969.

At the time of the derailment Train No. 154 was proceeding at 30 miles per hour, a speed within the authorized limit for the train at that point. The track, while scheduled for heavy maintenance within a few weeks, was nevertheless in good condition and entirely satisfactory for trains going 40 miles per hour. Neither the condition of the roadbed nor the speed of the train contributed in any way to the derailment.

Immediately after the accident, members of the AGS legal staff and its division counsel in Mississippi came to Laurel, and, after investigating the circumstances, determined that AGS should attempt to settle the claims of those injured or damaged by the derailment. AGS immediately began to compromise and settle claims on the fairest and most equitable basis it could.

## I.

Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates that we apply the substantive law of Mississippi. "In arriving at our decision, our goal is, of course, to reach that result which would most probably be reached had this action been litigated in the State Court." Mississippi Power Company v. Roubicek, 462 F.2d 412, 417 (5th Cir. 1972).

■■ The common law obligation of implied indemnity is rooted in the notion that every person should be responsible for his own negligence. Hence, an individual without fault who is legally compelled to pay damages to a third party on account of the negligent or tortious conduct of another is vested with an action in indemnity against the active wrongdoer for recovery of the amount paid. This is the rule which has been applied by the courts of Mississippi. *See* Home Insurance Co. v. Atlas Tank Mfg. Co., 230 So.2d 549 (Miss. 1970); Bush v. City of Laurel, 215 So. 2d 256 (Miss.1968); St. Louis & San Francisco Rwy. v. United States, 187 F. 2d 925, 927 (5th Cir. 1951). *See also* 41 Am.Jur.2d Indemnity § 20 (1968); 42 C.J.S. Indemnity § 20 (1944).

"Two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong." Home Insurance Co. v. Atlas Tank Mfg. Co., *supra.* 230 So.2d at 551.

■ Adhering to the universal rule, the Mississippi courts have qualified the principle of implied indemnity with the corollary that no right of indemnity exists between joint tortfeasors[4] or parties *in pari delicto*, that is

---

3. AGS, like every other major railroad in the country, is a member of the Association of American Railroads and subscribes to the AAR Code of Interchange Rules, which requires that a thorough inspection be made of each interchange of cars between railroads to determine if the equipment is safe for operation and that no defects in safety apparatus exist.

4. The term "joint tortfeasors" means that two or more persons are the joint participants or joint actors, either by omission or commission, in the wrongful production of an injury to a third person. There the act or omission of each is his own act or omission, but the acts or omissions are concurrent in, or contribute to, the production of the wrongful injury, so that each actor is, on his own account, liable for the resulting damages. But when the liability of a principal for the tort of an agent, or that of the master for the wrong of a servant, has grown out of a tort in which the agent or servant is the sole actor, whence the liability of the principal or master is an imputed or constructive liability and has its sole basis in the doctrine of respondeat superior and in nothing else, the liability is joint and several, but they are not joint tort feasors. Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 581, 1 So.2d 216, 218 (1941).

"where the injury resulted from the concurring negligence of both parties." Bush v. City of Laurel, *supra,* 215 So. 2d at 260. An action for indemnity will arise "when one party does the act or creates a dangerous situation and the other party is liable . . . because of passive negligence in failing to remedy the defect or because of a non-delegable statutory duty." Bush v. City of Laurel, *supra,* 215 So.2d at 260. *See, e. g.,* Alabama Great Southern Railroad Co. v. Chicago & Northwestern Railway Co., 493 F.2d 979 (8th Cir. 1974).

To satisfy the initial condition precedent for recovery—damages imposed as a result of a legal obligation to the injured party—the railroad asserts a blended theory to establish its liability to those it paid, based on (a) passive negligence, *i. e.,* it failed to remedy a latent defect built into the 003 car by the defendants; (b) the legal effect of Miss.Code Ann. § 13–1–119 (1972),[5] which provides that proof of injury from a derailment is prima facie evidence of the railroad's want of reasonable skill and care in operation; and (c) "common sense," *i. e.,* everyone knows that any person injured by the operation of a train who sues the railroad will recover.

■ We begin our analysis with the final element in the blend. Certainly no court would deliberately render a decision that departed from that much-to-be-desired but, at times, hard-to-define virtue, common sense. However, the notion that "common sense" dictated that a purported indemnitee rightfully paid an injured party has never been held to be a substitute for prerequisite legal liability. Just as earnestly as the railroad contends that it surely would have been held liable if it had awaited suit and the court's judgment instead of engaging in immediate adjustment and settlement of claims, the defendants assert that these payments were made without basis in duty or logic. No Mississippi precedent has been cited for this vague concept and we decline to predict that the law of that state will adopt such a shadowy concept.

■ The prima facie statute ingredient in the railroad's mixed bag fares no better. From enactment, its legal effect has been only "to cast upon the railroad company the duty of producing some evidence" to counter the "inference of negligence" it creates. Mobile, Jackson & Kansas City R.R. Co. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910). When the railroad comes forward with proof of the circumstances surrounding the accident, the inference vanishes and the jury must resolve the fact question of negligence solely on the basis of record evidence. *See, e. g.,* New Orleans & Northeastern R.R. Co. v. Lee, 205 So.2d 923 (Miss.1968); Illinois Central R. Co. v. Gibson, 219 Miss. 815, 70 So.2d 52 (1954); Korter v. Gulf & S. I. R. Co., 87 Miss. 482, 40 So. 258 (1906). The Supreme Court of Mississippi "has, in a long line of cases, held that it was the duty of the trial court to grant a peremptory instruction for the railroad company where the prima facie case was satisfied by the disclosure of the facts and the facts failed to show negligence." Stapleton v. Louisville & Nashville R.R. Co., 265 F.2d 738, 740 (5th Cir. 1959).

■ Indeed, the "insurance" construction urged by AGS—that the prima facie statute imposed a non-delegable

---

5. In all actions against railroad corporations and all other corporations, companies, partnerships and individuals using engines, locomotives, or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, for damages done to persons or property, proof of injury inflicted by the running of engines, locomotives or cars of any such railroad corporations or such other corporation, company, partnership or individual shall be prima facie evidence of the want of reasonable skill and care of such railroad corporation, or such other corporation, company, partnership or individual in reference to such injury. This section shall also apply to passengers and employees of railroad corporations and of such other corporations, companies, partnerships and individuals.

duty of error-free railroad operation and *ipso facto* established liability to injured third parties—would contravene the due process clause of the Fourteenth Amendment. "The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company, or of the traveler on the highway, or of both, or without fault of anyone. Reasoning does not lead from the occurrence back to its cause." Western & Atlantic R.R. Co. v. Henderson, 279 U.S. 639, 642–643, 49 S.Ct. 445, 447, 73 L.Ed. 884 (1929).

The record before us manifests that the railroad introduced sufficient proof to remove the prima facie statute from the case. It also demonstrates unequivocally that as a matter of law the jury could only have concluded either that the railroad was actively negligent or that it was guilty of no negligence whatsoever. At trial AGS adduced proof that the L–3 wheel fractured as a result of a defective manufacturing procedure. Defendants countered with evidence indicating that the L–3 wheel conformed to AAR standards and was not defective, and that the wheel fractured due to the excessive speed of the train and the poor condition of the crossing and roadbed. AGS rejoined with proof that the track and crossing were in good condition and that the train was proceeding at the authorized speed limit. The jury's verdicts on the principal claim and defendants' counterclaim establishes that it accepted the railroad's version. Finally, AGS proved without contradiction that it conducted a complete AAR interchange inspection of the 003 car before the accident and did not discover the defect. Moreover, even had the L–3 wheel been clean enough and so positioned as to expose the grooves and tears, the railroad proved its inspectors were not trained to recognize such signs as indicative of a defective wheel. No proof established or even intimated that a reasonable inspection by the railroad could have revealed the defect it claimed caused the derailment.

As a matter of Mississippi law, no view of the entire record will sustain a finding that the railroad was only passively negligent. In Southwest Mississippi Electric Power Assn. v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966), the plaintiff power association filed a complaint for indemnity, averring that it purchased a truck from the retailer defendant specifying electric holding brakes, which defendant Harragill installed. After a period of successful operation plaintiff's employee rear-ended an automobile because the truck's brakes failed. Despite its exercise of reasonable care and caution in inspecting and maintaining the truck and brakes, Southwest asserted it was unable to discover the defective and improperly assembled brake fittings that had caused the brake failure and the ensuing accident. "In short, Southwest alleged that it was guilty of no negligence whatsoever. . . ." Southwest Mississippi Electric Power Assn. v. Harragill, *supra*, 182 So.2d at 223. The power association had settled a lawsuit brought by the automobile owner and then instituted the action for indemnity. A demurrer to this complaint was sustained by the trial court and affirmed on appeal because these admitted facts did not establish that the power association was liable under state law to the injured automobile owner.

"This Court adheres to the rule that failure of brakes makes only a prima facie case of liability against a motorist which the driver may defend by showing proper inspection and a sudden failure without warning. . . . Stated differently, the operator of a motor vehicle is liable for injuries caused by defective brakes only if he was negligent in failing to discover the defect." Southwest Mississippi Electric Power Assn. v. Harragill, *supra*, 182 So.2d at 223 (citations omitted). Consequently, the Mississippi Supreme Court held that plaintiff's settlement was voluntary and not paid un-

der compulsion, a circumstance which precluded indemnity.

Although dictum in several decisions would indicate that failure to remedy a defect created by another constitutes passive negligence which does not bar indemnity, *Harragill* remains the only Mississippi case in which such facts were decisional. Every other indemnity decision was resolved on the basis of a determination of active neglect by the asserted indemnitee or a legal relationship between the purported indemnitee and the injured party in which liability was imputed by operation of law or a non-delegable statutory duty.

The lynchpin of the railroad's position is forged from the "equal in grade" dicta in *Atlas Tank* and the "failure to remedy" language used in *Bush*.[6] In the former case the defendant dangerously lowered the clearance beneath the plaintiff power company's high voltage transmission lines when it filled in and leveled a ravine area. Its employee was fatally electrocuted when the machinery he was operating came in contact with a 13,000 volt distribution line. The power company was aware of the dangerous condition and had promised the defendant it would raise the wire by installing new utility poles. After the power company had been held liable to the deceased, it sought liability from Atlas. The Mississippi Supreme Court refused indemnity, holding that the power company had been actively, rather than passively negligent in breaching its duty to inspect and maintain its lines in a safe condition, especially after the defendants had requested the same. In *Bush,* the plaintiff city had contracted with the defendant to relocate certain of its water and sewerage lines. A third party sued and recovered judgment against the city for injuries incurred from a fall into a ditch dug during construction. *See* City of Laurel v. Upton, 253 Miss. 380, 175 So.2d 621 (1965). The Mississippi Supreme Court affirmed an award of indemnity in the amount of settlement against the defendant, holding that the plaintiff city, though without active fault, was guilty of passive negligence in breaching a non-delegable duty to its inhabitants to maintain its streets and sidewalks in a reasonably safe condition. Neither of these decisions can be interpreted to mean that the failure of AGS to discover an undiscoverable defect rendered it passively negligent in the Laurel derailment, or that any person who

---

6. In *Atlas Tank* the court said:

The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negligence, may be entitled, upon an equitable consideration, to shift his responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on his own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case. (230 So.2d at 551).

and this language was used in *Bush*:

Except as provided by Mississippi Code 1942 Annotated section 335.5 (1956) there is no right of contribution in Mississippi where the parties are joint tort feasors or are in pari delicto—i. e., where the injury resulted from the concurring negligence of both parties. However, parties are not in pari delicto when one party does the act or creates a dangerous situation and the other party is liable or because of passive negligence in failing to remedy the defect or because of a non-delegable statutory duty. (215 So.2d at 260).

If the passive negligence concept of implied indemnity is to be extended to encompass the greater-lesser negligence concept advanced by AGS, and accepted in the trial court's instructions to the jury, the result could conflict with Mississippi statutory scheme of contribution between joint judgment debtors in proportion to their numbers rather than the quantum of negligence that may be ascribed to each. Miss.Code Ann. § 85-5-5 (1972). For example, if one defendant who was 49% negligent may have full indemnity against a co-defendant found to be 51% at fault, the statute's command that they share the loss 50-50 is aborted. The same would be equally true where the negligence was .01% and 99.99%, even though the equities are much greater.

utilizes a defectively manufactured product may compensate a party injured by such use and receive indemnity from the manufacturer.

▮▮ Unlike a municipality, a railroad in Mississippi is not burdened with a non-delegable duty to keep its equipment free from hidden or latent defects. Neither is it an insurer for every calamity or injury traceable to the operation of its trains. *See* Gulf, Mobile & Northern R.R. Co. v. Sparkman, 180 Miss. 456, 177 So. 760 (1938). It had the duty under Mississippi law to operate its trains in a reasonably safe manner. AGS was not situated vis-à-vis any defendant in such a way (master-servant, principal-agent) as would cause it to be held liable to an injured third party without fault of its own.[7] The railroad's problem was that in seeking to avoid Charybdis (active negligence which would make it a joint tortfeasor), it fell into Scylla (nonliability which made it a volunteer).

▮▮ To answer the claim that it paid without liability to do so, AGS introduced the complaint, answer, judgment and opinion of the court in Turner v. Alabama Great Southern Railroad Company, Civil Action No. 2378 (S.D. Miss., filed December 5, 1969), a suit brought to recover damages for personal injury caused by the derailment. The case was tried by the court, which found for the plaintiff, concluding that the sole proximate cause of the derailment was the fracturing of the unsafe L-3 wheel, worn to within 3/1000 of an inch of its tolerance, which "should not have been utilized in the exercise of reasonable care." The records of that cause which were placed in this record indicate no evidence was introduced showing the L-3 wheel was defectively machined. Assuming, *arguendo,* that the *Turner* judgment is binding on all parties to the present litigation, rather than on the railroad alone, it establishes no more than that the railroad's active negligence

---

7. We note the following analysis from Builders Supply Co. v. McCabe, 366 Pa. 322, 325, 77 A.2d 368, 370, 24 A.L.R.2d 319 (1951), cited by the Mississippi Supreme Court in *Bush.*

"There is, of course, a fundamental difference between indemnity and contribution. The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence,—a doctrine which, indeed, is not recognized by the common law. It depends on a difference in the *character* or *kind*, of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . .

Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him cause the injury." (Citation omitted) (Emphasis in original)

in utilizing a defective wheel caused the accident.

■ Had AGS joined these defendants as third party defendants in *Turner* or brought a declaratory judgment action to adjudicate the liability of each party, perhaps it would not find itself in the unenviable position of attempting to prove enough negligence without establishing too little. Because we are convinced the Mississippi Supreme Court would rule that the trial court was required to direct a verdict for defendants on the evidence, we reverse the judgment entered below on the railroad's claim for indemnity.

## II.

In their counterclaims to recover the market value of the jumbo tank cars and liquefied petroleum gas destroyed in the derailment, Allied and GATX predicated the railroad's liability on negligence (1) in maintaining its roadbed, track and crossing in an unsafe condition and (2) in operating and inspecting train No. 154, all of which allegedly proximately caused the accident and loss. The parties stipulated the value of the property destroyed. In addition, Allied and GATX introduced letters from AGS in which the railroad requested these defendants to bill it for the depreciated value of the tank cars and authorized scrapping the remnants. By return letter Allied and GATX submitted invoices and the requested authority. AGS did in fact salvage some of the parts, placing them in its second-hand inventory, and sold the rest of the cars for scrap, retaining the proceeds. AGS however, thereafter refused to pay Allied and GATX for the value of the destroyed cars.

■ The jury returned a verdict for AGS on the counterclaims, which were submitted solely on the theory of negligence. On appeal Allied and GATX urged that they are entitled to judgment as a matter of law because (1) AGS breached a valid compromise and settlement agreement that became enforceable when the counterclaimants accepted the railroad's offer to compromise for the depreciated value of the tank cars and (2) AGS was liable for the loss of tank cars in its possession due to derailment, explosion or fire under AAR interchange rules, which were introduced in the court below. These theories were never presented to or passed upon by the trial court, either in the pleadings, the formal motions for summary judgment or directed verdicts, or in a request for jury instructions. Since the jury's finding of no negligence on the part of AGS finds support in the record, the verdict cannot be disturbed. *See* Delancey v. Motichek Towing Service, Inc., 427 F.2d 897 (5th Cir. 1970).

> While these contentions may have had merit if timely raised in the district court, it is well established that, in the absence of a miscarriage of justice, issues not raised or presented in the lower court will not be considered for the first time on appeal.

Excavators and Erectors, Inc. v. Bullard Engineers, Inc., 489 F.2d 318, 320 (5th Cir. 1973); *accord* Wolf v. Frank, 477 F.2d 467 (5th Cir. 1973); Hill York Corp. v. American International Franchises, Inc., 448 F.2d 680 (5th Cir. 1971); *see also* Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); ·EEOC v. Standard Forge & Axel Co., Inc., 496 F.2d 1392 (5th Cir. 1974).

The cause is remanded for entry of a judgment in accord with this opinion.

Reversed on Direct Appeal affirmed on Cross Appeal and remanded.

COLEMAN, Circuit Judge (concurring).

I have always felt that appellate reversal of a jury award is an extremely serious matter. This, of course, is more than compounded when dealing, as we are here, with a verdict for $3,600,000. See Cooley v. Strickland Transportation Company, 5 Cir., 1972, 459 F.2d 779 (dissenting opinion). Nevertheless, as all lawyers and judges know, the juris-

prudence, under well defined principles, is replete with instances wherein directed verdicts and judgments notwithstanding the verdict were clearly required.

The massive loss sustained by the Railroad in the catastrophe of January 25, 1969, is more than enough to excite the concern of court and layman alike. Nevertheless, I must agree that the law, cogently demonstrated in the opinion so ably written by Judge Clark, inescapably points to the result herein directed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.