CITY OF LAUREL, MISSISSIPPI, et al. *v.* UPTON

No. 43523 May 31, 1965 175 So. 2d 621

*Welch, Gibbes & Graves,* Laurel; *George P. Hewes, III, Brunini, Everett, Grantham & Quin,* Jackson, for appellant, United Gas Corporation.

*Deavours & Hilbun,* Laurel; *Daniel, Coker & Horton,* Jackson, for appellant, City of Laurel, Mississippi.

*Melvin, Melvin & Melvin,* Laurel, for appellant, A. A. Bush, Contractor.

*F. B. Collins, Paul G. Swartzfager, Wm. Harold Odom,* Laurel, for appellee.

INZER, J.

Appellee, Mrs. Margie Upton, filed this suit in the Circuit Court of the Second Judicial District of Jones County against the City of Laurel, A. A. Bush, Contractor, Bush Construction Company, Inc., and United Gas Corporation. Her suit was predicated upon personal injuries alleged to have been sustained when she stepped in a ditch or excavation alleged to have been negligently left in an unsafe condition by defendants. A nonsuit was taken against Bush Construction Company, Inc., and it is no longer a party to this litigation. The jury returned a verdict of $84,583 against the remaining three defendants. A judgment was entered against defendants, and from this judgment they have appealed to this Court.

To avoid confusion, appellants will be referred to as follows: A. A. Bush, Contractor as Bush; United Gas Corporation as United; and City of Laurel as City.

The facts in this case show that as a result of the construction of U. S. Highway 59 through the city of Laurel, it was necessary for City to relocate certain water and sewerage lines. In 1957 City entered into a contract with Bush to relocate these water and sewerage lines, and in making such changes to make the necessary excavations in the streets and sidewalks, and upon completion to restore the streets and sidewalks to their former condition. In the latter part of October or the early part of November 1957, Bush opened the excavation or ditch here in question for the purpose of relocating an eight-inch water line. In order to do this work, it was necessary for Bush to remove a part of the paved portion of South Magnolia Street and also a portion of the sidewalk that was outside of the street curb. This ditch extended from the edge of the traveled portion of South Magnolia Street in a western direction. The ditch was from four to six feet wide, and about four feet deep at the point near the street. As the ditch extended westward, it narrowed to about two feet wide. In December 1957 United found that it was necessary, in order to increase the pressure on one of its gas lines located west of Magnolia Street, to lay a two and three-eights inch line to connect with another one of its gas lines on the east side of Magnolia Street. It obtained permission from Bush to place its gas line in the ditch in which Bush had already placed the eight-inch water line. It was understood that after United placed its line in the ditch it would backfill the ditch. On December 10, 1957 United laid its line in the ditch, and the next day it filled the ditch by pushing mud and loose dirt into it. The dirt was not packed or tamped in the ditch. After this was done United left the area and never went back to do any further work relative to this ditch.

On February 21, 1958 appellee was walking south on the sidewalk along the west side of South Magnolia Street. When she came to the place where the sidewalk had been removed, she saw a place where it appeared people had been crossing the ditch or excavation. Cars were parked near the place where the sidewalk formerly was, and there was heavy traffic on Magnolia Street, which was used for southbound traffic for U. S. Highway 11. She was unfamiliar with the situation, and when she decided to attempt to cross the ditch where it appeared people had been crossing, she stepped on a place where the dirt had dried and formed a crust over the top of the ditch. When she put her weight on this place it gave way under her foot, causing her to fall forward, and she sank into the mud up to her waist. There were no barricades or signs to warn appellee that it was unsafe to cross the ditch. She was afraid to try to go around the ditch by getting out into the traveled portion of the highway because of the heavy traffic. She contends that she was severely and permanently injured as a result of her fall into the ditch.

 Appellants have filed separate briefs, and each argues several points for reversal of this case. We will first discuss the points that they urge in common. The first contention is that the negligence of appellee was the sole proximate cause of her injuries. They argue that she did not use ordinary care in attempting to cross this ditch at the place she did, when she could have gone around the ditch by getting out into the street and walking a short distance. Appellee in her testimony, which is not contradicted, gave as her reason for not getting into the street to go around the ditch that the traffic was heavy and she was afraid she would be hit by a car. According to her testimony the place where she was attempting to cross appeared to be safe, and it was not until she placed her full weight upon her right foot that the surface gave way and caused her to fall. The defect

was hidden from her. This Court has long since laid to rest this contention. We said in the case of City of Pascagoula v. Kirkwood, 86 Miss. 630, 38 So. 547 (1905), that:

> Every city rests under the legal obligation to maintain its sidewalks in a reasonably safe condition for the use of pedestrians. This obligation rests as well for passage by night as by day. The pedestrian is entitled to use the sidewalks at any time, and may at all times rely on the mandate of the law which imposes upon the municipality the burden of exercising a reasonable diligence in the construction and maintenance of its sidewalks, and makes it responsible for all damages resulting from any default in the observance of this duty. A pedestrian is not required by law to leave the sidewalk and go out into the street under conditions such as surround the scene of the accident in the instant case, and risk the danger of passing electric cars or chance vehicles, in order to avoid a defective sidewalk which the city has negligently permitted to continue in a dangerous condition after notice of the existence of the defect. It is true that knowledge of the unsafe condition demands an additional degree of care by the pedestrian, commensurate with the danger of the situation; but the testimony of the appellee, which is in no wise discredited, and which bears the impress of perfect truth, shows that she discharged this duty of extra care, and that the injury was solely attributable to the negligence of the city. (38 So. at 547-48)

We are of the opinion that the question of whether appellee used reasonable care for her own safety was a question for the jury. The trial judge properly submitted this issue to the jury under proper instructions. Hawkins v. City of Natchez, 242 Miss. 91, 133 So. 2d 610 (1961); City of Hattiesburg v. Kelly, 226 Miss. 529, 84 So. 2d 680 (1956); City of Meridian v. Akin, 193

Miss. 505, 10 So. 2d 194 (1942); Birdsong v. City of Clarksdale, 191 Miss. 532, 3 So. 2d 829 (1941); Saxon v. Town of Houlka, 107 Miss. 161, 65 So. 124 (1914); City of Jackson v. Carver, 82 Miss. 538, 35 So. 538 (1903).

 Appellants urge also that the trial court was in error in refusing to allow appellants to introduce a letter signed by Dr. Bass, after Dr. E. J. Holder had testified on behalf of appellee that his medical opinion was based in part on this letter. Dr. Holder is an orthopedic surgeon who has been practicing medicine for twenty-five years, and who for the past four years has been associated with Dr. James C. Bass in the operation of the Laurel Bone and Joint Clinic. Dr. Holder was the only doctor who testified on behalf of appellee. He said that he first saw appellee on July 29, 1963. She was referred to him by Dr. Ruffin, a practicing physician in the City of Laurel. At that time she was complaining of low back pain and pain in her right leg. He had x rays made at that time, but they did not show any bone damage. He found that she had limitation of motion in her back because of pain, muscle tightness, and muscle spasms. He made a stretch test, and the result was positive on the right side. He said that appellee gave him a history of her injuries and past treatment by other doctors. The court sustained an objection to the doctor repeating statements made to him by appellee relative to treatment by other doctors. Dr. Holder also ran a myelogram test on appellee. He found no conclusive evidence of disc damage, but found suggestion of such damage. He stated that in about fifteen percent of the cases where myelogram test results are negative, further exploration reveals disc protrusions do exist. He recommended to appellee that she have an exploratory operation. It was his idea that if no protrusion of the disc was found, she should have a fusion of the spine to limit motion in the joint that was giving her trouble.

He said that this does not always eliminate the pain. He also found that appellee had atrophy of the calf of the right leg. This indicated a limitation of the motion of the leg which caused the muscles of the leg to dry up. His diagnosis was that appellee had nerve root pressure at vertebrae L-5 interspace on the right from a probable disc protrusion. It was his opinion that appellee is unable to do the type of work that she was doing prior to her injury. He prescribed that she wear a brace, or corset, which she was wearing at the time of the trial. Upon cross-examination it was developed that Dr. Holder, in arriving at his opinion, had considered the reports, letters and opinion of Dr. James C. Bass. He had these reports and letters with him in his file. Appellant sought to introduce into evidence the report of Dr. Bass and sought to cross-examine Dr. Holder relative to that report. The trial court sustained an objection to the introduction of the report and refused to allow appellants to make further inquiry relative to the text of the report. Appellee contends that the trial court was not in error in this action, that the privileged communications statute prohibited Dr. Bass from testifying unless the privilege was waived. We are presented with a question that so far as we have been able to determine has not heretofore been decided by this Court. We said in the recent case of Wild v. Bass, 252 Miss. 615, 173 So. 2d 647, that it was error for the trial court to allow a medical expert to base his testimony in part upon reports of other doctors not in evidence. We further said that the opinion of a medical expert should be based upon matters within his personal knowledge and on any matters properly in evidence. In this case appellants were not aware that Dr. Holder was basing his opinion in part on reports and letters of Dr. Bass until it was discovered by cross-examination. Under these circumstances we are of the opinion that appellants had the right to cross-examine Dr. Holder relative to these re-

ports and letters and to introduce them into evidence if they so desired. In every case where an expert witness is allowed to express an opinion such witness is subject to cross-examination as to the basis of his opinion. We see no valid reason why any different rule should prevail relative to a medical expert. We are not unmindful of the privileged communications statute, and do not hold that appellants had the right to put Dr. Bass on as a witness and have him testify over objection of appellee. We do hold that appellant had the right to cross-examine Dr. Holder relative to any matters which he used and considered in reaching his findings and to introduce such matters into evidence if they so desired. The trial court was in error in sustaining the objection to this testimony.

■■ ■ United contends that the negligent manner in which Bush attempted to maintain the excavation constituted an independent, intervening cause which relieved it from liability, and further that the excavation was under the exclusive control and direction of Bush, and United can not be held liable under these circumstances. In answer to this contention appellee says United agreed to backfill the ditch, and when it did backfill it with loose dirt and mud, it was negligent; that having assumed this duty to the public, United had a continuing duty to the public to use reasonable care to prevent injury until such time as the ditch was restored to its former condition. There is no question relative to the fact that Bush had this duty, but the question we are now presented with is whether United, who had nothing to do with the ditch except to backfill it, can be held liable for injury that happened seventy-two days later. The proof is conclusive that after the ditch was filled, Bush assumed complete control of it. The evidence reveals that Bush received numerous complaints about the condition of the ditch and that its employees were there most every day repairing or patching it. They replaced

at times warning signs and guarding devices. The condition of the ditch at the time of the accident had been created by Bush. The proof shows that on several occasions cars became stuck in the ditch, and this was brought to the attention of Bush. Bush did not ever call on United to return and do anything further relative to the ditch. No-one else ever notified United or complained to them relative to the condition of the ditch. We are of the opinion that the contention of United is well taken. In E. I. Du Pont De Nemours & Company v. Ladner, 221 Miss. 378, 73 So. 2d 249 (1954), we quoted with approval from 38 Am. Jur. *Negligence* section 72, which announces the applicable rule of law. It states:

> One who acts negligently is not bound necessarily to anticipate that another person will be negligent after the latter has discovered the danger arising from the former's negligence. The first actor, however, is not permitted to assume that the second actor will discover the danger caused by the first actor's negligence. Accordingly, where the second actor after having become aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability because the condition created by him was merely a circumstance and not the proximate cause of the accident. (73 So. 2d at 255)

The request of United for a peremptory instruction should have been granted, because its negligence was not the proximate cause of the accident. Permenter v. Milner Chevrolet Co., 229 Miss. 385, 91 So. 2d 243 (1956); Stewart v. Kroger Grocery, 198 Miss. 371, 21 So. 2d 912 (1945); Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So. 2d 34 (1943).

 ██ The City of Laurel contends that it is not liable for the injuries suffered by appellee for several

reasons. We deem it necessary to discuss only the question of whether under the facts of this case City can be held liable. It contends that if this Court holds it liable under the facts of this case, it will amount to a holding that a municipality is an insurer with absolute liability for any possible injury along its streets or sidewalks. It further contends that a municipality owes the duty only of exercising ordinary care to keep its streets and sidewalks reasonably safe for persons using ordinary care and caution for their own safety. We have heretofore pointed out that it was a question of fact for the jury to determine whether appellee was using ordinary care for her own safety. The City, under the facts in this case, was not maintaining its streets and sidewalks in the usual manner, but was engaging in relocating its water and sewerage lines, making it necessary for the excavation to be made. The fact that City was doing this work at the instance of the state and federal governments is not material in this case. The fact remains that City entered into the contract with Bush to do the work, and City does not contend that Bush was not negligent in the manner it maintained the excavation. It does contend that it had no notice of the unsafe condition or the defect in question. This position is not tenable, because the proof shows that Mrs. Mulholland called the mayor and complained about the situation that existed in this area. The fact that Bush was an independent contractor does not relieve the City under the circumstances of this case. The City had a non-delegable duty to maintain its streets and sidewalks in a reasonably safe condition, and it is liable for the negligence of its independent contractor in making the excavation and leaving it in an unsafe condition. City of Ruleville v. Grittman, 250 Miss. 842, 168 So. 2d 527 (Miss. 1964); City of Cleveland v. Threadgill, 246 Miss. 23, 148 So. 2d 670 (1963); Gould v. Town of Newton, 157 Miss. 111, 126 So. 826 (1930).

The City further contends it was entitled to an instruction which was refused, to the effect that if the accident happened in a street used as a part of the primary road system it was not liable by virtue of the provisions of Mississippi Code Annotated section 8037(b) (1956). The part of this section relied on states:

On any municipal streets or parts of sections thereof taken over for regular maintenance and maintained by the state highway department as a part of the state highway system the municipality shall not be liable for negligence occasioned by the maintenance or repair of such streets so thus apportioned to and of such width as is maintained by the state highway department; provided, however, that the common law immunity of the state or the state highway department from suit in any such case shall not be deemed to be waived to any extent whatsoever by virtue of the foregoing provision. The municipality shall have full control and responsibility beyond the curb lines of any such streets.

We think that there is no merit in this contention. It is clear that all this section does is to relieve the city from any liability because of negligence occasioned by the repair and maintenance of a street maintained by the highway department. It does not relieve the city for its negligence in causing an excavation or ditch to be opened and maintained in dangerous condition at a place that extends into that part of the street being maintained by the highway department.

We find that the trial court properly submitted the issues to the jury relative to the liability of City and Bush, and that from the facts in this case the jury was justified in finding that City and Bush were liable. We are of the opinion that the case should be affirmed as to these two appellants on the question of liability.

Appellants Bush and City urge that this cause should be reversed and remanded for a new trial on the question

of damages, because the verdict of the jury is so excessive as to evidence passion, bias and prejudice, and because the trial court was in error in refusing them the right to cross-examine Dr. Holder relative to matters upon which he based in part his opinion and findings. In fact, appellants say that the verdict is so excessive that it totally vitiates the entire verdict. We have carefully considered the evidence relative to the injuries and Dr. Holder's testimony relative thereto, and we are of the opinion that this cause should be remanded for a new trial on the question of damages. The error of the trial court in refusing to allow appellants to cross-examine Dr. Holder relative to matters upon which he in part based his findings was prejudicial, and probably explains to some extent the excessive verdict. ▮▮ The verdict of the jury in this case is so large that it is shocking to the enlightened conscience and evidences bias, passion and prejudice on the part of the jury.

▮▮ Appellee devotes a large part of her brief to this question and contends that this Court is without the constitutional authority to set aside a verdict because we find it to be so large that it is shocking to the enlightened conscience and evidences bias, passion and prejudice on the part of the jury. We are not concerned with this point alone in remanding this case for a new trial on the question of damages. For this reason we do not deem it necessary to extend our opinion to great lengths in citing the many cases decided by us which long since settled this issue. We will repeat only what we said in Beard v. Williams, 172 Miss. 880, 161 So. 750 (1935):

> We are conscious of the fact that the verdict of a jury is to be given great weight, and is the best means, when fair, of settling disputed questions of fact. Nevertheless, throughout the entire history of jury trials, the courts have exercised a supervisory power over them, and have granted new trials whenever convinc-

ed, from the evidence, that the jury has been partial or prejudiced, or has not responded to reason upon the evidence produced. The duty of the court in supervising trials by jury is such a vital part thereof that no court may refuse to exercise such power whenever fully convinced of its duty so to do. (161 So. at 751)

For the reasons stated, this case is affirmed as to liability against appellants A. A. Bush, Contractor and City of Laurel, and reversed and remanded for a new trial on the question of damages only. The case is reversed, and judgment rendered here for appellant United Gas Corporation.

As to appellant United Gas Corporation, reversed and judgment here; as to appellants A. A. Bush, Contractor and City of Laurel, affirmed as to liability, reversed and remanded for new trial on question of damages only.

*Lee, C. J., and Gillespie, Brady and Patterson, JJ.,* concur.