504 So.2d 186 (1987)
Nathaniel GRIFFIN
v.
STATE of Mississippi.
Nos. 56136, 56241.
Supreme Court of Mississippi.
March 4, 1987.
*187 Thomas E. Royals, Royals, Hartung & Davis, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Nathaniel Griffin was convicted of murder and sentenced to life imprisonment by the Circuit Court of the Second Judicial District of Hinds County. Prior to his trial, a competency hearing was held and the jury found that Griffin was competent to assist his lawyer in preparing his defense and thereby competent to stand trial. He has consolidated these two cases for our consideration on appeal. For the reasons discussed below, we affirm both the competency determination and the murder conviction.

FACTS
Sometime during the early morning hours of September 22, 1982, Maxine Lewis and Bernice Ratliff were murdered. Their bodies were found near the Natchez Trace at a rest area just south of Interstate 20 in Hinds County. Officer Sammy Magee of the Hinds County Sheriff's Department investigated the crime and learned that the victims were last seen with Nathaniel Griffin. Griffin was subsequently arrested in Vicksburg and a search of the residence where he was staying uncovered a .22 calibre revolver. Subsequent ballistic tests conducted by the State Crime Lab confirmed that the revolver was used in the murders. Griffin was later indicted for the murder of Maxine Lewis on February 24, 1983.
*188 During his incarceration in Hinds County pending trial, Griffin complained of numerous physical ailments and filed numerous handwritten motions alleging, among other things, that there was a conspiracy at jail to poison him. Drs. Donald Guild and Charlton Stanley examined Griffin and concluded that he was incompetent to assist counsel and incompetent to stand trial. Griffin was transferred by court order to the Mississippi State Hospital. The staff at the Mississippi State Hospital evaluated Griffin and determined that he was competent to stand trial. Drs. Guild and Stanley disputed this determination and Griffin's attorney filed a motion for a preliminary hearing to determine his competency. The jury, after hearing conflicting medical testimony, found that Griffin was competent to stand trial.[1]
A trial on the merits was held on March 12, 1984. Debra Butler, Griffin's girlfriend, testified on behalf of the prosecution and detailed the events leading up to the murder. She stated that after arguing with the victims, Griffin shot Maxine Lewis. Additional forensic evidence confirmed that the gun recovered at the time of the arrest was the murder weapon. At the close of the hearing, the jury found Griffin guilty of the murder of Maxine Lewis and sentenced him to life imprisonment.

LAW
As previously noted, Griffin assigns errors from both the competency hearing and the trial on the merits. Accordingly, we will examine each under separate headings.

THE COMPETENCY HEARING

I.

WHETHER ALLEGED CUMULATIVE ERROR AND ALLEGED PROSECUTORIAL MISCONDUCT WAS SUCH THAT THE DEFENDANT WAS DENIED A FAIR COMPETENCY HEARING?
Griffin points to at least seven alleged errors which he claims rendered his competency hearing unfair and in violation of both the United States and our State Constitution. Citing Smith v. State, 457 So.2d 327 (Miss. 1984), Griffin argues that the cumulative effect of these errors denied him a fair competency hearing. Some of the alleged errors were objected to, while others were not. Regardless, we will briefly discuss the merits of each error.
Griffin's first alleged error occurred at the close of voir dire when the prosecutor commented that the defendant had assisted his counsel in selecting the jury. Griffin argues that this was an improper comment on his demeanor and influenced the jury to believe he was competent regardless of the evidence produced at the hearing.
We have long held that prosecuting attorneys should refrain from commenting upon the appearance or the demeanor of the defendant at trial. Reed v. State, 197 So.2d 811 (Miss. 1967). However, we cannot say that the comments in this case prejudiced the defendant. The statements did not criticize the defendant's demeanor nor attempt to vilify him in any way. Rather the comments simply reflected the activity in open court that occurred in front of the jury. The prosecution simply added this to the record in the event of a subsequent appeal. In light of this, we find no merit to Griffin's argument.
Griffin's next alleged error concerns the mode of cross-examination used by the prosecution during its examination of Dr. Guild. The questions complained of concern the amount of time which Dr. Guild examined Griffin prior to rendering his opinion as to Griffin's competency to stand trial. Griffin argues that the prosecution's examination of Guild amounted to nothing more than a browbeating technique designed to prejudice the jury. We do not agree.
*189 In Hollins v. State, 340 So.2d 438, 441 (Miss. 1976), we held that the length of time required for psychological testing was a proper subject for cross-examination. In this case, the subject matter of the cross-examination was both relevant and proper. As such, we cannot find any alleged prejudice that might have occurred to the defendant and therefore find Griffin's argument to be without merit.
Griffin next argues that Dr. Guild was asked to draw legal rather than psychiatric conclusions during the cross-examination. Under direct examination, Guild testified that his opinion as to Griffin's incompetency was based in part on Griffin's belief that he was a legal expert and that the 270 day rule would prevent him from being tried on these charges. He also stated that he relied on the opinion of Tommy Mayfield, the assistant prosecutor, in determining that Griffin was incompetent to stand trial. On cross-examination, the prosecution asked Guild numerous questions with regard to whether Griffin's beliefs and Mayfield's opinions led to his conclusion that Griffin was incompetent to stand trial.
In every case where an expert witness is allowed to express an opinion, such witness is subject to cross-examination as to the basis of that opinion. City of Laurel v. Upton, 253 Miss. 380, 175 So.2d 621 (1965). This rule is equally applicable to medical experts. 175 So.2d at 625. Under this authority, it is clear that the subject matter of the prosecution's cross-examination was proper. The questions were designed to test and examine the basis of Guild's opinion that Griffin was incompetent to stand trial. The questions did not ask the witness to draw legal conclusions but simply asked whether or not Griffin's beliefs and Mayfield's opinion played a role in his final evaluation of Griffin's competency. Accordingly, we find no error here.
Griffin next contends that the trial judge erred in allowing Dr. Gray Hillsman to express his opinion about Dr. Guild's diagnosis of Griffin. Griffin argues that such testimony serves only to pit one expert's testimony against another and that this usurped the function of the jury.
In Belesky v. City of Biloxi, 412 So.2d 230 (Miss. 1981), we recognized that expert witnesses can consider testimony of other experts in reaching their expert conclusions. Further, in Hollins v. State, 340 So.2d 438, 441 (Miss. 1976), we addressed a similar argument with the following passage:
It is argued that the trial court erred in allowing Dr. Stanley to testify as to his opinion of the finding of appellant's expert witness. We hold that these opinions were based upon his expert, independent knowledge of psychology and were used as a substitute for a hypothetical question. Having two different and opposing opinions offered by two experts, it was the duty of the jury as the fact-finding body to give such weight as it saw fit to their opinions.
The testimony in this case is controlled by the authority cited above. Dr. Hillsman listened to Guild's testimony at trial and offered his opinion with regard to whether or not Guild reached the correct diagnosis concerning Griffin's competency. Such testimony did not usurp the function of the jury, rather it gave the jury two opinions which they could give weight to as they saw fit. Again, we find no merit to this argument.
Additionally, Griffin contends that Dr. Margie Lancaster was allowed to testify outside her field of expertise. Dr. Lancaster was qualified as an expert in neurology. She was asked on direct examination whether or not she had an expert opinion as to whether Griffin was competent to stand trial. She testified that Griffin suffered from no neurological abnormalities which would prevent him from assisting counsel at trial. Griffin contends that such testimony was psychiatric rather than neurological and therefore was admitted in error.
In reviewing Lancaster's testimony, we fail to see where she stepped outside the realm of expertise. The gist of her testimony was that she had performed several neurological examinations on Griffin and found that he had no problems in his nervous *190 system which would prevent him from assisting counsel in preparing his defense. She was never asked nor did she ever express an opinion with regard to whether Griffin suffered from psychiatric abnormalities that would prevent him from assisting counsel at trial and thereby rendering him incompetent to stand trial. Therefore, we hold that no error occurred here.
Griffin's last alleged incident of prejudicial error occurred when the State was allowed to introduce a letter written by the staff at Whitfield into evidence at the conclusion of Dr. Lancaster's testimony. The letter in question was a culmination of various tests performed by the staff at Whitfield and used in the final evaluation of Griffin's competency. Griffin argues that such information constitutes inadmissible hearsay and requires that this Court reverse.
In Williamson v. State, 330 So.2d 272 (Miss. 1976), we faced a similar question but declined to address the issue because defense counsel had failed to make a contemperaneous objection stating the specific reasons for his objection to the introduction of such a letter. 330 So.2d at 274. In the case at bar, Griffin did object to the admission of the evidence. His objection was that Lancaster should not be allowed to testify to anything else out of the field of neurology. Although not specific, it is clear to us that Griffin objected to anything contained in the report that dealt with matters other than neurology or the neurological examinations performed by Dr. Lancaster. As such, we feel compelled to address this argument.
In Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965), we held that an expert should not be allowed to base his testimony on reports of other doctors or other data not properly in evidence. 173 So.2d at 652. Clearly, the report in this case contained hearsay evidence. However, there is no indication that Dr. Lancaster based her opinion on this letter. Lancaster had previously testified that based upon her own neurological examinations, she had found Griffin competent to stand trial. Further, the State's other expert witnesses each testified that based upon their own independent examinations of the defendant they had reached the conclusion that he was competent to stand trial. Although the letter should not have been admitted because it contained inadmissible hearsay evidence, we nevertheless find that the admission of the letter constitutes harmless error. The record as a whole indicates that there was overwhelming evidence to support the jury's verdict that Nathaniel Griffin was competent to stand trial. See Miss. Sup.Ct. Rule 11. As such, we find that none of these errors, either alone or when taken cumulatively, created such prejudice so as to deny Griffin a fair competency hearing.

II.

WHETHER THE JURY WAS ERRONEOUSLY INSTRUCTED AS TO THE BURDEN OF PROOF IN A COMPETENCY HEARING?
Under this assignment of error, Griffin contends that the jury was erroneously instructed as to the burden of proof in a competency hearing. The essence of his argument though is that there is no particular standard of proof that the State is required to prove competency by. He argues that the State should be required to prove by clear and convincing evidence that the defendant was incompetent to stand trial. As such, he argues that instruction Nos. 1 and 2 were erroneous because they set the same standard of proof for each party. Griffin's argument fails for at least two reasons. First, he failed to make a specific objection at trial to any of the instructions given by the trial judge. Rule 42 of the Mississippi Supreme Court Rules specifically provides that unless a specific objection is made at trial to a particular instruction, such an assignment of error will not be considered on appeal by this court. See Miss.Sup.Ct. Rule 42. Griffin's failure to object at trial thereby bars review of this alleged error.
Secondly, the basic procedure for trial courts to follow in determining whether or not an accused is competent to stand *191 trial is set forth in Emanuel v. State, 412 So.2d 1187 (Miss. 1982). Such procedures used in State courts to determine the competency of a criminal defendant have been approved by the United States Supreme Court. See Drope v. Missouri, 420 U.S. 162, 174, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975). Further, the prosecution at the federal level is required to prove the competency of a criminal defendant by a preponderance of the evidence. See United States v. Makris, 535 F.2d 899 (5th Cir.1976). We see no reason for imposing a greater burden on state officials, especially in light of the fact that our procedures for determining competency are specifically designed to afford the accused due process of law and to ensure that he is capable of making a rational defense prior to being tried for the crime for which he is accused. See Emanuel v. State, 412 So.2d 1187 (Miss. 1982). Accordingly, we find no merit in Griffin's argument that the State should be required to prove competency beyond a reasonable doubt or by clear and convincing evidence.
Thus, after reviewing the evidence and the record, we find no prejudicial error which denied Griffin due process or rendered his competency hearing unfair and in violation of the State and Federal Constitutions. Therefore, we affirm the finding of the jury that Griffin was competent to stand trial.

TRIAL ON THE MERITS

I.

WHETHER THE CUMULATIVE EFFECT OF ALLEGED PROSECUTORIAL MISCONDUCT DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL?
Again Griffin presents numerous incidents of misconduct and urges that their cumulative effect ultimately deprived him of his right to a fair trial. He basically sets forth two types of errors for review. First, Griffin contends that the trial court erroneously allowed the prosecution to admit evidence of other crimes for which he was neither charged nor being tried for at this proceeding. Secondly, he argues that the prejudicial comments by the prosecution during voir dire and closing argument inflammed the jury's passion, prejudice and bias such that he was denied a fair and impartial trial. We will address the errors under their respective headings.

A.

DID THE TRIAL COURT IMPROPERLY ADMIT EVIDENCE OF SEPARATE AND DISTINCT CRIMES OTHER THAN THE ONE CHARGED?
Griffin's first assignment of error concerns the introduction of certain photographs which depicted the scene of the crime. The photographs showed two bodies laying at the rest area. Although Griffin fails to cite any authority for the proposition that such photographs constitute evidence of other crimes, we will address this issue any way.
Photographs of bodies may be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory. Johnson v. State, 476 So.2d 1195, 1206 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985). Additionally, we have also recognized that evidence of a separate and distinct crime other than the crime for which the accused has been charged is inadmissible in those proceedings against the accused. Blair v. State, 445 So.2d 1373 (Miss. 1984). However, there are some recognized exceptions to this general rule, including an exception which allows introduction of evidence of a separate and distinct crime where the two crimes are so intertwined as to constitute a single transaction. See Johnson v. State, 416 So.2d 383, 386 (Miss. 1982).
Turning to the instant case, it is clear that the two crimes were so connected so as to constitute a single transaction. The bodies were found together and the victims were killed by the same weapon. The remaining forensic evidence indicates that the time of death for each victim was within minutes of the other. Further, the *192 photographs were not extremely gruesome nor used in an inflammatory or prejudicial manner. They were used simply to identify the scene of the crime and the victim and were highly probative in this regard. We cannot say that the introduction of these photographs was reversible error.
Griffin complains that evidence of a separate crime was elicited by the State during the testimony of Officer Kenny Williams. During direct examination, Officer Williams was asked who arrested Griffin and testified that Griffin was arrested on other charges. Defense counsel objected and the trial judge immediately instructed the jury to disregard the statement. Thereafter, on cross-examination, defense counsel again asked Williams who arrested Griffin and he responded in like manner. Defense counsel moved for a mistrial which was overruled.
An attorney who invites error cannot complain of it. Edwards v. State, 441 So.2d 84, 90 (Miss. 1983). Clearly, defense counsel invited the error in this case, particularly in light of the fact that a similar exchange had occurred only moments before during direct examination. Further, defense counsel should have requested that the trial judge admonish the jury again. See Simpson v. State, 497 So.2d 424, 431 (Miss. 1986). We find no merit in this argument.
Additionally, Griffin argues that evidence of a separate and distinct crime was introduced during the re-direct examination of Debra Butler by the State. On cross-examination, defense counsel attempted to impeach Butler by introducing letters she had written to Griffin while she was incarcerated. Reference was made to certain violent acts done to her by Griffin in the past. On re-direct, the State inquired about the nature of these acts and Butler testified that Griffin had beaten her and burned her with cigarettes in the past. Griffin contends that such testimony was highly prejudicial and simply used to inflame the passion of the jury, thus constituting reversible error. We disagree.
In Gill v. State, 485 So.2d 1047 (Miss. 1986), we recognize that "where one side opens the door, the other may come in and develop that point in greater detail." 485 So.2d at 1051; see also, Winters v. State, 449 So.2d 766 (Miss. 1984). Once the letters were introduced, the prosecution was free to delve into and develop the statements contained therein in greater detail. We find no error here.
Finally, Griffin cites other similar incidents during the testimony of other witnesses which he failed to object to at trial. It is incumbent on counsel to object contemperaneously when objectional statements are given during a witness' testimony so that the trial judge can correct any error with proper instructions to the jury. Shelton v. State, 445 So.2d 844, 846 (Miss. 1984). Griffin's failure to object or ask the court to admonish the jury effectively prevents him from assigning this as error on appeal. Accordingly, we find no merit in Griffin's claim that the trial court improperly admitted evidence of separate and distinct crimes other than the one for which he was charged.

B.

WHETHER PROSECUTORIAL MISCONDUCT DURING VOIR DIRE AND CLOSING ARGUMENT WAS SUCH TO WARRANT REVERSAL OF THE CONVICTION?
Under this assignment of error, Griffin contends that statements by the prosecution during voir dire were highly prejudicial and improper. The thrust of Griffin's argument concerns the following exchange:
Is there anyone that for any reason right now knows in their mind that they would be looking for a doubt other than a reasonable doubt? For instance, a shadow of a doubt and excuse or any reason at all to find this defendant not guilty? ... You'll only require us to prove him guilty beyond a reasonable doubt.... So, no one then will be looking for an excuse to find defendant not guilty.
*193 Griffin contends that this amounted to a verbal instruction defining reasonable doubt and urges that we reverse the conviction based on this. See Gilleylen v. State, 255 So.2d 661 (Miss. 1971).
In Bingham v. State, 434 So.2d 220 (Miss. 1983), we reviewed a similar voir dire exchange and held that such questions were not improper where no jury instructions were submitted to the jury which attempted to define reasonable doubt. 434 So.2d at 225. In the instant case, no instructions were submitted to the jury which attempted to define reasonable doubt. We find that these questions were not improper and therefore, no error resulted during voir dire.
Additionally, Griffin argues that the prosecution's questioning of prospective jurors during voir dire with regard to whether they had any prejudice against prostitutes or known convicted felons constituted an obvious comment on the testimony of the witnesses and was therefore highly improper and constituted reversible error. We disagree.
In Myers v. State, 268 So.2d 353, 355 (Miss. 1972), we held that it was the duty of the prosecutor to make inquiries that would ensure that the jurors would be fair and impartial to the defendant as well as to the State's case. Further, we noted that in passing upon the extent and propriety of questions addressed to prospective jurors, the trial court was vested with considerable discretion. 268 So.2d at 355; see Bingham v. State, 434 So.2d 220 (Miss. 1983) (reaffirming Myers). In the present case prosecution was entitled to question prospective jurors with regard to any prejudice they may harbor against witnesses intended to be called by the State during their case-in-chief. Since many of the witnesses in this case had past histories of prostitution or criminal convictions, we find that the questioning was relevant and proper. Further, we note that the trial judge, at the request of defense counsel, instructed the prosecution to rephrase its questioning of the jury in an effort to negate any potential prejudice caused by this line of questioning. In light of this, we fail to see any prejudice that resulted from this line of questioning and therefore find this argument to be without merit.
Finally, Griffin contends that the prosecution made impermissible comments on his failure to testify and his failure to call witnesses on his own behalf during their closing argument to the jury. Griffin's argument centers around the following passage:
... the defendant's niece. The only person  on voir dire I said, "Tell us who your witnesses are going to be." She's the only name we were given. And why? Why? We found out yesterday, didn't we? Because he had called her and said, "Tell him Debra brought the gun out there." And she played along with him. And we found out about it. And we confronted her with it. And she said, "Okay, I'll tell the truth." And she took the stand and did. And all of a sudden they don't have that witness any more. That one great witness they told us that they were going to call. We couldn't imagine why they were going to call her. But we found out. If he's so innocent, if that's another witness that didn't have anything to say, why did he bother to call her? Why did he bother to ask her to lie?
Although Griffin failed to object at trial, he now contends that this statement clearly made reference to his failure to testify and warrants that this Court reverse his conviction.
Commenting on a defendant's failure to testify violates "an elementary and long established principle of law." West v. State, 485 So.2d 681 (Miss. 1985) (citations omitted). Further, since the criminal defendant's right not to testify on his own behalf is protected by both the State and the United States Constitutions, we are not precluded from reviewing alleged constitutional violations even though defense counsel fails to make contemporaneous objections. See Stringer v. State, 500 So.2d 928 (Miss. 1986). Additionally, prosecutorial comments regarding the failure of a defendant to call witnesses on his own behalf are equally prejudicial and have constituted *194 grounds for reversal in many of our past decisions. See Madlock v. State, 440 So.2d 315 (Miss. 1983); Collins v. State, 408 So.2d 1376 (Miss. 1982); Morgan v. State, 388 So.2d 495 (Miss. 1980). With these principles in mind we focus our attention on the statements complained of in this case.
The record reflects that Griffin contacted his niece, Carolyn Buck, and attempted to influence her testimony. The comments in this case appear to comment on the evidence properly presented to the jury rather than Griffin's failure to call a witness on his behalf. Both sides are afforded wide latitude in their final arguments to the jury so long as they do not argue some impermissible factor. Neal v. State, 451 So.2d 743 (Miss. 1984). Clearly, evidence properly admitted at trial falls within the broad latitude that we referred to in Neal. Further, upon careful review of both parties' closing arguments, it appears that the statements complained of in this case were in direct response to Griffin's argument that the State had failed to link him to the crime charged. The comments above do not directly comment on his failure to testify nor can they be reasonably construed as an impermissible comment on his failure to testify. Further, while the comments may indirectly insinuate that Griffin failed to call witnesses on his own behalf, this is not enough to warrant reversal in this case. Cf. Jackson v. State, 440 So.2d 307, 310 (Miss. 1983) (insinuation that criminal defendant failed to testify not reversible error). Accordingly, we find no merit in this argument.

II.

WHETHER THE TRIAL COURT ERRED IN ALLOWING PREVIOUS CONSISTENT STATEMENTS BY DEBRA BUTLER TO BE INTRODUCED DURING RE-DIRECT EXAMINATION?
At trial, Debra Butler testified on behalf of the State and implicated Griffin as the sole culprit in the murders. During cross-examination, defense counsel impeached Butler's testimony by introducing letters she had written to Griffin while she was incarcerated which indicated that she had lied to police officers when she told them that Griffin committed the crimes. On re-direct, over defense counsel's objection, the State was allowed to introduce Butler's initial statements made to police shortly after her arrest. Griffin now contends that this constituted an impermissible bolster of Butler's testimony and ultimately led to a miscarriage of justice. We cannot agree.
In Smith v. State, 457 So.2d 327 (Miss. 1984), we held that evidence of prior consistent statements is admissible when a witness' credibility has been attacked by proof of prior inconsistent statements provided that the witness either denies or admits the statement but explains it. Smith, 457 So.2d at 335; see also, Stampley v. State, 284 So.2d 305 (Miss. 1973) (same and reaffirmed in Smith). Such evidence is not evidence of the fact testified to by the witness, rather it is offered for the sole purpose of supporting the testimony of the witness whose veracity has been attacked and as such the evidence is to be received with great caution and only for the purpose of rebuttal so as to enable the jury to make a correct appraisal of the witness' credibility. Stampley v. State, 284 So.2d 305, 307 (Miss. 1973).
In this case defense counsel attacked the truthfulness of Butler's initial statements with the subsequent letters. This amounted to a direct attack on Butler's veracity. Thereafter, on re-direct, she admitted writing the letters, attempted to explain why she wrote the letters, and testified that her initial statements were truthful. Under the authorities set forth above, we find no error in the admission of the prior consistent statements and conclude that this assignment of error is meritless.

III.

WHETHER THE TESTIMONY OF TIMOTHY BUCK WAS INTRODUCED IN VIOLATION OF RULE 4.06?
At trial, the State attempted to call Timothy Buck to the stand to testify that Nathaniel *195 Griffin instructed him to remove the gun from Carolyn Buck's home. Defense counsel objected, arguing they were not notified of Buck's testimony pursuant to a 4.06 discovery order. The trial judge delayed the testimony until defense counsel had the opportunity to interview Buck that night. The next day, defense counsel objected to Buck's testimony and moved for a mistrial. Griffin now argues that this constitutes reversible error.
In Cabello v. State, 471 So.2d 332, 343 (Miss. 1985), we recognized that when a trial court is faced with an alleged 4.06 violation, its initial response should be to allow the surprised party to interview the non-disclosed witness before allowing that witness to testify. After this interview, if the surprised party determines that it will be subjected to an unfair surprise if the witness testifies, it is incumbent that the surprised party move for a continuance. Cabello, 471 So.2d at 343; see also, Box v. State, 437 So.2d 19, 22-26 (Miss. 1983) (Robertson, J., concurring) (setting forth guidelines for 4.06 violations).
Clearly, the trial court attempted to avert any unfair prejudice by allowing Griffin's counsel to interview Buck prior to his testimony. Thereafter, it was incumbent on Griffin to move for a continuance rather than a mistrial prior to Buck's testimony. Failing to do so, we cannot say that the trial court erred in allowing Buck to testify even though the defense was not formerly notified that he would be called as a witness. We find that this assignment of error lacks merit.

IV.

DID THE TRIAL COURT ERR IN ADMITTING STATEMENTS MADE BY THE DEFENDANT WHICH WERE SECURED IN VIOLATION OF THE DEFENDANT'S RIGHT AGAINST SELF-INCRIMINATION?
Under this final assignment of error, Griffin argues that the trial court improperly admitted certain statements that he had made while being transported to Hinds County because those statements were obtained after he invoked his right against self-incrimination. The statements complained of concern Griffin's purchase of a gun prior to the date of the murders. Subsequently, the gun was identified as the murder weapon. Griffin concedes that the officers re-read him his Miranda rights on the way to Hinds County. However, he contends that the State failed to prove a knowing and intelligent waiver of those rights so as to make the admission of the statements permissible.
In Jones v. State, 461 So.2d 686 (Miss. 1984), we recognize that once a criminal defendant invokes his right against self-incrimination, regardless of the manner or language he utilizes, police interrogation must cease immediately and the accused's rights are to be "scrupulously honored." Jones, 461 So.2d at 699. Thereafter, law enforcement officials may not resume interrogation unless:
1. There has been an adequate cooling off period;
2. There is a reasonable basis for inferring that the suspect has voluntarily changed his mind;
3. New and adequate Miranda warnings are given.
Jones, 461 So.2d at 699, 700.
The State has the burden of proving that these requirements have been met before a subsequent statement can be properly admitted into evidence. Id.
Apparently, Griffin indicated that he wished for the initial interrogation to cease while he was in custody in Vicksburg. However, subsequent interrogation occurred over an hour after he was initially read his Miranda rights. Further, there is no dispute that Griffin was re-read his Miranda rights enroute to Hinds County. Finally, Sheriff J.W. Stevens testified that he personally re-read the Miranda warnings to Griffin and that Griffin acknowledged that he understood those rights prior to making any statements. Applying the guidelines set forth in Jones to the instant case, we hold that that State met its burden and therefore, the trial *196 court properly admitted the statements at trial.
Finding no prejudicial error either at the competency hearing or at the trial on the merits, we affirm both the determination that Griffin was competent to stand trial and the subsequent conviction and life sentence for the murder of Maxine Lewis.
COMPETENCY DETERMINATION AFFIRMED. CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] This hearing was conducted pursuant to § 99-13-11 of the Miss. Code Ann. (1972), which has been construed as requiring the issue of competency to be submitted to a jury for resolution. See McGinnis v. State, 241 Miss. 883, 133 So.2d 399 (1961); Williamson v. State, 330 So.2d 272 (Miss. 1976).