560 So.2d 717 (1990)
LONG TERM CARE, INC., d/b/a Senatobia Convalescent Center and Empire Fire & Marine Company
v.
JESCO, INC.
No. 07-CA-58825.
Supreme Court of Mississippi.
April 11, 1990.
Rehearing Denied May 16, 1990.
*718 Cynthia I. Mitchell, Merkel & Cocke, Clarksdale, for appellants.
L.F. Sams, Jr., Michael D. Greer, Mitchell McNutt Bush Lagrone & Sams, Tupelo, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Long Term Care, Inc. d/b/a Senatobia Convalescent Center (Long Term) and its liability insurance carrier, Empire Fire and Marine Insurance Company (Empire) filed suit in the Circuit Court of Tate County seeking to recover from the building contractor, Jesco, Inc. (Jesco) the sums which Empire Fire and Marine Insurance Company, had paid to Hattie Raggett, who had suffered injuries in a fall on a sidewalk constructed by Jesco, Inc. on premises leased by Long Term. The trial court, Honorable Andrew C. Baker, presiding, granted summary judgment in favor of Jesco, Inc. for the reason that Long Term was not entitled to contribution or indemnity because Long Term's payment to Raggett represented either (1) a settlement for Long Term's active negligence based on its knowledge of the potentially dangerous condition of the sidewalk, or (2) a voluntary payment not made under compulsion of law, if Long Term had no notice of any dangerous condition. Long Term and Empire appeal and assign three errors in the proceedings below.

FACTS AND JUDGMENT
The summary judgment granted by the lower court adequately sets forth the facts of the case upon which the court arrived at its conclusions. The judgment follows:
The record on the motion for summary judgment reveals that in October 1975, James A. Brewer and James M. Brewer entered into a lease contract with Edgar H. Overstreet, Denver Northrip and Royce Delaney, as lessees, for the construction and leasing of a 120 bed nursing home to be constructed by the Brewers, as lessors, which lease was for an initial term of ten years, and which provided, inter alia, that the lessees should maintain the property for which lessees would have complete maintenance responsibility after twelve months. The lease agreement further provided that lessees would carry liability insurance which would protect both lessees and lessors. By addendum dated January 4, 1979, and after the construction had been completed and accepted by the owners (lessors) and The Federal Housing Administration and the Department of Housing and Urban Development, the ten year lease term was caused to commence as of May 1, 1978, and imposed upon the lessees responsibility "for all maintenance in and about the demised premises."
The record further reflects that Jesco, Inc. defendant, entered into a contract with the owners-lessors for construction of the Senatobia Convalescent Center, performing work thereon during the years 1977 and 1978, with final inspection of the project by the architect and the United States Department of Housing and Urban Development occurring on July 20, 1978. Thereafter, on or about July 18, 1981, Hattie V. Raggett, while on the premises of the Senatobia Convalescent Center visiting her sister, stumbled and fell on the sidewalk resulting in certain personal injuries. On August 24, 1982, Ms. Raggett filed suit against both lessors and lessees claiming that the defendants knew or should have known about the dangerous condition existing in the sidewalk for a substantial period of time prior to her fall of July 18, 1981, without taking corrective action to repair the defect, without warning pedestrians *719 of the defective condition, and by otherwise allowing the sidewalk to become or remain in a dangerously defective condition resulting in substantial injuries. Defendants in that lawsuit by and through their underwriter, Empire Fire & Marine Insurance Company, liability insurer, negotiated a settlement, and entered into a settlement agreement and covenant not to sue with Ms. Raggett for the sum of $75,000.00 with certain conditions attached. This agreement was executed on September 14, 1983, and contemplated that Ms. Raggett might bring additional action against Jesco, Inc. with a portion of the proceeds of any recovery to be returned to Empire Fire & Marine Insurance Company, to her attorneys, and to Ms. Raggett herself. Shortly thereafter, Ms. Raggett through the same counsel filed an action in the United States District Court for the Northern District of Mississippi, Delta Division, against Jesco alleging negligence on the part of Jesco in the construction of the premises. Ultimately, on June 21, 1985, a settlement was effected between Ms. Raggett and Jesco for the sum of $25,000.00 releasing all claims of Ms. Raggett against Jesco, and the suit against Jesco was dismissed with prejudice. The lessees next brought an action in the Circuit Court of Tate County, Mississippi, against Jesco, Inc., being the cause at bar. Empire Fire & Marine Insurance Company, pursuant to the provisions of Rule 17, Mississippi Rules of Civil Procedure, and upon a showing that it is the real party in interest, has been made a party plaintiff and is before the court. The action is one for indemnity for all sums paid by the underwriter plus attorneys' fees and expenses.
The court is convinced that Empire Fire & Marine Insurance Company paid the sum of $75,000.00 to Ms. Raggett in behalf of the lessees-defendants in the original action based upon the record on this motion which reflects knowledge of the existence of the condition about which Ms. Raggett complained for a substantial period of time prior to her fall in July 1981. Mr. Northrip's investigation conducted after the accident and Mr. Manning's testimony demonstrate to this court that the lessees were aware of a condition in the sidewalk which was exacerbated by hot weather, and which caused tar to rise above the level of the sidewalk during the hot summertime. Even if the facts in this record could be construed otherwise, the payment of $75,000.00 to Ms. Raggett made by Empire Fire & Marine Insurance Company was made in recognition of the liability exposure of its insureds and the lessees of the premises. If the condition in the sidewalk was latent, and the lessees had no notice of any dangerous condition, then payment in behalf of the lessees would not have been payment under compulsion of law. Waller v. Dixieland Food Stores, Inc., 492 So.2d 283 (Miss. 1986); Southwest Mississippi Electric Power Association v. Harragill, [254 Miss. 460] 182 So.2d 220 (Miss. 1966); Home Ins. Co. v. Atlas Tank Manufacturing Co., 230 So.2d [549] 550 (Miss. 1970); Alabama Great So. Railroad Company v. Allied Chemical Corp., 501 F.2d 94 (5th Cir.1974). If the payment was not voluntary, then it was based upon a failure to remedy or warn concerning a patent defect in the sidewalk which is clearly active negligence. There is no contribution permitted among joint tortfeasors. Granquist v. Crystal Springs Lumber Company, [190 Miss. 572] 1 So.2d 216 (Miss. 1941). Empire's insureds were either actively negligent or not negligent at all.
Empire Fire & Marine Insurance Company by settlement with Ms. Raggett clearly discharged the liability of its own insureds or the liability of Jesco, but not the liability of both. The release documents reveal that the right of action against Jesco was preserved by Ms. Raggett when the settlement was effected in 1983, and that Ms. Raggett in fact instituted an action and effected a recovery from Jesco. Therefore, Empire does not fall within the rule of the Restatement of Torts 2d, Section 886(B), which provides for indemnity where one party of two liable parties discharges the liability of *720 both, and is by virtue of unjust enrichment entitled to indemnity. It is therefore
ORDERED AND ADJUDGED that the Complaint filed in this action be and it is hereby dismissed with prejudice with all costs to be taxed to the plaintiff for which let execution issue.

LAW
The assigned errors of the appellant present three questions, i.e., (1) whether there were genuine issues of material fact as to passive negligence of Long Term; (2) whether Long Term was guilty of no negligence and was therefore a volunteer in paying the $75,000 settlement to Hattie Raggett and (3) whether Long Term was precluded from indemnity from Jesco because Long Term did not obtain a release for Jesco in paying the settlement figure of $75,000.
In Southwest Mississippi Electric Power Association v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966), Colonial Chevrolet had engaged O.K. Welding to fit a truck with special brakes to meet the specification of the purchaser, Southwest. When the brakes failed, causing injury to another vehicle driver, the injured woman filed suit against Southwest and its driver. Southwest denied all negligence, asserted as affirmative defense that the welding company had used improper fittings and had improperly assembled the fittings, and averred that it had been unable, in the exercise of reasonable care and caution, to discover the defective fittings and assembly. Southwest settled the suit before trial and then filed an action seeking common law indemnity from the welding company and the truck dealer. The trial court sustained the demurrers of the defendants and, in affirming the holding that Southwest had volunteered payment to the plaintiff and was not entitled to indemnity, this court said:
Two principal questions are presented for our determination: (1) Whether under the facts alleged by Southwest it was legally liable to Mrs. Dunn for the damages sustained by her in the collision between her automobile and the truck belonging to Southwest, and (2) if Southwest was not liable to Mrs. Dunn, was the payment to her voluntary. We hold that according to the allegations of the declaration filed by Southwest there was no liability on its part to Mrs. Dunn and the payment made to her was the act of a volunteer and cannot be recovered in an action for indemnity.
In the modern development of common law indemnity, the cases fall into three categories: (1) cases involving vicarious liability, (2) cases where the indemnitee has failed to discover the condition that caused the initial injury, and (3) cases where both indemnitor and indemnitee have breached a duty, but as between themselves, the indemnitor has agreed to perform. It is not necessary to determine whether the present case comes within one of these three categories. The payment was voluntary, and we base our decision on that issue.
Southwest Mississippi Electric Power Association v. Harragill, 254 Miss. 460, 466-67, 182 So.2d 220, 222-23 (1966) (footnote omitted)
The Court further stated that the driver of a vehicle is liable for injuries caused by defective brakes only if he was negligent in failing to discover the defect. The Court accepted Southwest's allegations that it had been unable, in the exercise of reasonable care, to discover the faulty fittings and concluded that the facts did not show that Southwest was liable. In the case at bar, Long Term admitted that it denied negligence on its part in the Raggett suit against Long Term, but that Long Term had negotiated a reasonable settlement of Raggett's claim and paid $75,000 therefor.
In the case at bar, Long Term cites Bush v. City of Laurel, 215 So.2d 256, 260 (Miss. 1968). However, it receives no help from Bush because there the Court held that the City of Laurel could not be considered a volunteer since its liability had been clearly established in another case (City of Laurel v. Upton, 253 Miss. 380, 175 So.2d 621 (1965)) and only the amount of damages remained in question. The Bush Court further *721 discussed Mississippi law prohibiting contribution among joint tort feasors and invoked an exception to this rule which permits a "passive wrongdoer" to claim a right to indemnity from an "active wrongdoer":
[T]here is no right of contribution in Mississippi where the parties are joint tort feasors or are in pari delicto  i.e., where the injury resulted from the concurring negligence of both parties. However, parties are not pari delicto when one party does the act or creates a dangerous situation and the other party is liable or because of passive negligence in failing to remedy the defect or because of a non-delegable statutory duty. [citations omitted] As in the case at bar, a municipality cannot be considered in pari delicto with the person who caused the defect or destruction. [citations omitted] ... "[I]n Mississippi, as generally elsewhere, a right of indemnity * * * arises in favor of one not actively at fault against an active wrongdoer." [St. Louis & San Francisco R. Co. v. U.S.] 187 F.2d [925] at 927 [5th Cir.1951]. The City's right to indemnity in this case was not effected [sic] by the fact that the City had given its consent to the operation which caused the defect or obstruction.
Bush v. City of Laurel, 215 So.2d 256, 260 (Miss. 1968).
In Alabama Great Southern Railroad v. Allied Chemical Corporation, 501 F.2d 94 (5th Cir.1974), the railroad company paid over seven million dollars in settling claims for injuries caused by a derailment and explosion and then sought indemnity from the manufacturer and seller of a defective wheel that had caused the derailment and from the company which owned the car on which the defective wheel had been placed. The railroad company sought to be labeled "passively" negligent so as to qualify itself for indemnity just as Long Term does here. The Fifth Circuit Court of Appeals reversed the trial courts grant of summary judgment for the railroad stating:
[A]s a matter of law the jury could only have concluded either that the railroad was actively negligent or that it was guilty of no negligence whatsoever... .
As a matter of Mississippi Law, no view of the entire record will sustain a finding that the railroad was only passively negligent.
Id. at 100.
* * * * * *
Although dictum in several decisions would indicate that failure to remedy a defect created by another constitutes passive negligence which does not bar indemnity, Harragill remains the only Mississippi case in which such facts were decisional. Every other indemnity decision was resolved on the basis of a determination of active neglect by the asserted indemnitee or a legal relationship between the purported indemnitee and the injured party in which liability was imputed by operation of law or a non-delegable statutory duty.
Id. at 101.
* * * * * *
The railroad's problem was that in seeking to avoid Charybdis (active negligence which would make it a joint tortfeasor), it fell into Scylla (nonliability which made it a volunteer).
Id. at 102.
Under the facts of this case, we are of the opinion that Raggett was an invitee of Long Term, which was under the duty to keep the premises in a reasonably safe condition and to warn Raggett of dangerous conditions not readily apparent, of which Long Term knew, or in the exercise of reasonable care, should have known. Waller v. Dixieland Food Stores, Inc., 492 So.2d 283 (Miss. 1986). See also Biloxi Regional Medical Center v. David, 555 So.2d 53 (Miss. 1989); E.A. Lumbley v. Ten Point Club, 556 So.2d 1026 (Miss. 1989).
Long Term, in the lease contract, assumed the duty to maintain the premises, which included the walk where Hattie Raggett was injured. After discovery in Raggett's case against Long Term, it was established that expansion joint material, protruding above the sidewalk and creating a hazard, had been there for a long period of time, despite the duty of Long Term. Then *722 it was that Long Term settled with Hattie Raggett for the sum of $75,000.
We are of the opinion that Long Term, on the facts of this case, did not follow a course such as to avoid both Charybdis and Scylla; that it was not guilty of passive negligence by which it sought to avoid those pitfalls; and that it was guilty of active negligence and was a joint tort feasor with Jesco. Further, we are of the opinion that the lower court did not err in granting summary judgment for Jesco. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.